(No. 66444.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LEE C. FELELLA, Appellee.

*Opinion filed September 20, 1989.—Rehearing denied December 4, 1989.*

528

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Kenneth T. McCurry, Susan J. Crane, Patrick M. Brady, Inge Fryklund, Marie Quinlivan Czech, and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

John M. Kalnins, of Chicago, for appellee.

George M. Elsener, of George M. Elsener & Associates, of Chicago, for *amicus curiae* Alliance Against Intoxicated Motorists.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Defendant, Lee C. Felella, was indicted in the circuit court of Cook County for the murder (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2)) of Robert Stegan. He waived his right to a jury and following a bench trial was convicted of voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b)). At the sentencing hearing, Stegan's mother testified about the emotional and physical impact she suffered as a result of her son's death. The defendant was sentenced to 12 years' imprisonment.

The appellate court, in a Rule 23 order (107 Ill. 2d R. 23), affirmed defendant's conviction, but vacated the sentence because of "the very real possibility that the mother's testimony was taken into account in assessing the sentence." (163 Ill. App. 3d 1156 (unpublished order under Supreme Court Rule 23).) We granted the State's petition for leave to appeal (107 Ill. 2d R. 315), and allowed the Alliance Against Intoxicated Motorists to file a brief as *amicus curiae* in support of the State. 107 Ill. 2d R. 345.

An issue presented for review is whether the mother's testimony should have been introduced at the sentencing stage of defendant's noncapital felony trial, pursuant to the Bill of Rights for Victims and Witnesses of Violent Crime Act (Act) (Ill. Rev. Stat. 1985, ch. 38, par. 1401 *et seq.*). Defendant on a cross-appeal contests the sufficiency of the evidence as to his manslaughter conviction.

The record reveals that defendant fatally stabbed Stegan, who was unarmed, with an eight-inch martial arts knife. It was stipulated that Stegan died from a stab wound to the heart and tested negative for drugs commonly known as "mushrooms."

The record also reveals that defendant and his brother, Fred, met Stegan on the morning of July 3, 1984, at Lonnie Nelson's house in Chicago. Nelson, Stegan, defendant and defendant's brother then went to Stegan's house, about a block away, where they drank beer. Stegan agreed to drive defendant and his brother to Franklin Park, Illinois. A short time later, Stegan, defendant and defendant's brother left in Stegan's pickup truck.

On the way to Franklin Park they stopped at a liquor store to buy more beer. While in the liquor store parking lot, defendant removed the martial arts knife from his bag to repair the truck's stereo. The knife was used by both Stegan and the defendant to strip the plastic casing off the stereo wires. After using the knife, defendant placed the

open knife on the seat of the truck, where it remained throughout the day. During the trip to Franklin Park, Stegan drank beer and, allegedly, ate hallucinogenic mushrooms.

After dropping defendant's brother off in Franklin Park, Stegan and defendant were to return to Chicago. Rather than returning directly to Chicago, Stegan drove to an apartment complex in Schiller Park, Illinois, where he met Lester Hermes, a former co-worker.

On the return trip to Chicago, Stegan allegedly slammed his watch into the dashboard of the truck and tried to "punch" defendant. Stegan also allegedly told defendant that he would "kick [his] ass."

Lonnie Nelson testified that at 7 or 7:30 p.m. that evening, he and Daniel Killian were sitting on his porch when defendant drove up in the truck with Stegan in the passenger seat. Defendant stopped the truck in the middle of the street in front of Nelson's house. He said the two men were arguing about defendant's "water bong," which was described as marijuana paraphernalia. Defendant left the truck and took the keys with him. Stegan moved over to the driver's side and exited the truck. Defendant then threw the keys into some bushes, which prompted Stegan to ask why he did so. The two resumed arguing about the "bong" and defendant said he would not help find the keys. Nelson further testified that he believed Stegan grabbed defendant by the shoulder, not to throw him down, but just to get his keys back. Stegan told defendant, "I'll kill you, you are shaking so bad." Nelson said that at this point defendant asked him for help, but he replied that he was not going to interfere. He further stated that defendant then pulled a knife from his right pocket, stabbed Stegan in the heart and ran away. He said that he had seen the defendant playing with the knife on several previous occasions, and that defendant had told him he at-

tended a martial arts school. He also said that Stegan never had a weapon in his hands during this time.

Daniel Killian testified as follows: he corroborated Nelson's testimony and added that both Stegan and defendant were pushing one another after they left the truck; he saw the knife in defendant's hand after Nelson told defendant that he would not get involved; he saw defendant reach out his arm, stab Stegan, pull the knife back and run; and he did not see any weapons in Stegan's hands. He further testified that he too had seen defendant playing with the knife at least once before; that when Stegan commented that he could kill defendant, Stegan's arms were at his side; and that although defendant was shaking when he requested help, it did not appear as if he needed any help.

Defendant testified that Stegan called him a "wimp" and threatened to kill him and "cut him up like a gook." He also said that Stegan jumped at him after he asked Nelson and Killian for help, and that he put out his hand with the knife in an effort to block Stegan, but instead the knife struck Stegan, after which he dropped the knife and fled. He also admitted that he had a prior felony conviction for burglary in Mississippi.

Defendant argues, in his cross-appeal, that the State failed to prove him guilty of the offense of voluntary manslaughter beyond a reasonable doubt. Defendant contends that Stegan was committing an aggravated battery, which is a forcible felony (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(8)), and he was therefore entitled to use deadly force to repel Stegan. He argues that he did all he could, short of not using any force to avoid Stegan's threats, by retreating and asking for assistance.

Whether a killing is justified under the law of self-defense is a question of fact to be determined by the trier of fact. (See *People v. Woods* (1980), 81 Ill. 2d 537, 542.) That determination will not be disturbed on appeal unless the evidence is so unreasonable, improbable or un-

satisfactory as to leave a reasonable doubt of defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261.

After hearing the evidence, the trial court found defendant guilty of voluntary manslaughter. Both voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b)) and self-defense (Ill. Rev. Stat. 1983, ch. 38, par. 7—1) involve the issue of whether defendant subjectively believed, at the time of the occurrence in question, that deadly force was justified. The distinguishing feature is the reasonableness of defendant's belief: if the defendant's belief as to the use of force was unreasonable, the crime should be reduced from murder to manslaughter. *People v. O'Neal* (1984), 104 Ill. 2d 399, 405.

The long-standing rule is that mere threats of personal injury or death do not justify taking the life of the person making the threats when he is doing nothing to put them into execution. (See *People v. Golson* (1945), 392 Ill. 252, 255-56.) Similarly, the use of foul or abusive language is no reason for taking another's life. *People v. Marrow* (1949), 403 Ill. 69, 75.

The testimony at trial was conflicting. Consequently, the trial judge, who saw and heard the witnesses testify, was entitled to weigh their credibility, draw reasonable inferences from their testimony, and resolve conflicts in the evidence in determining the reasonableness of defendant's action in killing the deceased. (*People v. Slim* (1989), 127 Ill. 2d 302, 307.) Where the evidence is conflicting, this court will not substitute its judgment for that of the trial court. *Woods*, 81 Ill. 2d at 542.

Defendant's claim of being an innocent victim conflicted with the testimony of Nelson and Killian. Additionally, although defendant asserted that he stabbed Stegan because he was afraid, on cross-examination he admitted that Stegan could have used the open knife that lay on the seat of the truck to make good his threats, but did not do so.

After reviewing the record, it cannot be said that the trial court's verdict is so unreasonable, improbable or unsatisfactory as to raise a doubt about defendant's guilt.

The next issue is whether the mother's testimony about the impact of her son's death should have been introduced at the sentencing phase of defendant's trial. The State asserts that the appellate court improperly applied the holding of *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, to this noncapital case. The State argues that *Booth* held only that victim impact statements should not be considered in capital sentencing hearings. The State also maintains that applying *Booth* to noncapital felony cases would disregard one of the rights accorded a victim under the Act (Ill. Rev. Stat. 1985, ch. 38, par. 1401 *et seq.*). Defendant contends that: *Booth* applies with equal force in a noncapital felony case; introduction of victim impact statements violates the United States and Illinois Constitutions; and the Act violates the separation of powers clause of the Illinois Constitution.

At issue in *Booth* was a Maryland statute which required that victim impact evidence be presented to the sentencing jury in a capital case. A majority of the Court held that the introduction of that evidence was unconstitutional, because the evidence was irrelevant and created an unacceptable risk that the death penalty would be imposed in an arbitrary and capricious manner. *Booth*, 482 U.S. at 502-03, 96 L. Ed. 2d at 448, 107 S. Ct. at 2533.

This court has, however, recently determined that *Booth* should not be extended to noncapital cases. In *People v. Turner* (1989), 128 Ill. 2d 540, 578, the court held that allowing victim impact evidence in a noncapital sentencing hearing did not violate that defendant's constitutional rights.

Similarly, the appellate districts which have considered the matter have allowed victim impact evidence at

the sentencing phase of noncapital cases. (See, *e.g.*, *People v. Scott* (1989), 180 Ill. App. 3d 418, 424-25; *People v. Fountain* (1989), 179 Ill. App. 3d 986, 999-1000; *People v. Van Ostran* (1988), 168 Ill. App. 3d 517, 522-24; *People v. Hines* (1988), 165 Ill. App. 3d 289, 303.) Additionally, *Booth* recognized that "[f]acts about the victim and family also may be relevant in a noncapital criminal trial." (*Booth*, 482 U.S. at 507 n.10, 96 L. Ed. 2d at 451 n.10, 107 S. Ct. at 2535 n.10.) Accordingly, we find no merit to defendant's contention that *Booth* should apply in noncapital cases. *Turner*, 128 Ill. 2d at 578. See also *Mills v. State* (Ind. 1989), 536 N.E.2d 290, 291; *State v. Walton* (1989), 159 Ariz. 571, 590, 769 P.2d 1017, 1036.

Defendant next contends that the Act is an *ex post facto* law and thus unconstitutional. (U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16.) Defendant also contends that he was entitled to an election under the sentencing statute (Ill. Rev. Stat. 1985, ch. 38, par. 1008—2—4). The State argues that defendant has waived this issue on appeal by failing to object on this basis at trial. Alternatively, the State maintains that if the issue was not waived, the victim's rights legislation was properly applied because the statute merely establishes a procedure by which the victim of a crime may be heard at sentencing. While defendant waived this issue by failing to object at trial, we nevertheless reach the constitutional issue. See *People v. Bryant* (1989), 128 Ill. 2d 448, 454 (constitutional challenge to a statute may be raised at any time).

Generally, an *ex post facto* law is one which is retrospective, affects substantial rights, and disadvantages the defendant. (*Miller v. Florida* (1987), 482 U.S. 423, 430, 96 L. Ed. 2d 351, 360, 107 S. Ct. 2446, 2451. See also *Calder v. Bull* (1798), 3 U.S. (3 Dall.) 386, 1 L. Ed. 648.) A defendant does not, however, have a "vested right" in the modes of procedure used at his trial. (*Mal-*

*lett v. North Carolina* (1901), 181 U.S. 589, 596, 45 L. Ed. 1015, 1019, 21 S. Ct. 730, 733. See also *Miller*, 482 U.S. at 430, 96 L. Ed. 2d at 360, 107 S. Ct. at 2451; *Dobbert v. Florida* (1977), 432 U.S. 282, 293, 53 L. Ed. 2d 344, 356, 97 S. Ct. 2290, 2298.) Moreover, it is well settled that the *ex post facto* clause does not limit the legislature's control of remedies or modes of procedure, so long as they do not affect matters of substance. *Beazell v. Ohio* (1925), 269 U.S. 167, 70 L. Ed. 216, 46 S. Ct. 68.

Here, the Act merely affects a mode of procedure. It simply allows a victim or witness to testify at the sentencing phase of the trial, after the defendant has been convicted. The Act does not increase the punishment or change the ingredients of the offense or the ultimate facts necessary to establish guilt (*Miller*, 482 U.S. at 433, 96 L. Ed. 2d at 362, 107 S. Ct. at 2452-53, quoting *Hopt v. Utah* (1884), 110 U.S. 574, 590, 28 L. Ed. 262, 269, 4 S. Ct. 202, 210), and it leaves untouched the nature of the crime and the level of proof necessary for a conviction (*Mallett*, 181 U.S. at 595-96, 45 L. Ed. at 1019, 21 S. Ct. at 733). Consequently, the Act does not violate the *ex post facto* provisions of either the United States (U.S. Const., art. I, §10) or Illinois (Ill. Const. 1970, art. I, §16) Constitution. Accordingly, defendant was not entitled to an election under the election statute (Ill. Rev. Stat. 1985, ch. 38, par. 1008—2—4), and therefore we need not address that issue.

Defendant also contends that by seeking to govern the admissibility of evidence at sentencing, the Act violates the separation of powers clauses of the Illinois Constitution. (Ill. Const. 1970, art. II, §1; art. VI, §1.) Defendant maintains that the Act "amounts to an unauthorized intrusion upon the manner in which cases are decided." The State argues that defendant has waived this issue by failing to object at trial. Alternatively, the

State maintains that the Act does not unduly infringe upon the rulemaking powers of the court. Although defendant failed to object at trial, we reach the constitutional issue. *Bryant*, 128 Ill. 2d at 454.

At issue here is section 6 of the Act. That section provides that "[t]he court *shall* consider any statements made by the victim, along with all other appropriate factors in determining the sentence of the defendant ***." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 1406.

Article VI, section 1, of the Illinois Constitution of 1970 vests the judicial power in the courts. Article II, section 1, of the Illinois Constitution of 1970 separates the government's power into three coequal branches, and no branch may exercise the powers belonging to another. By necessity, the branches of government do not operate in isolation, and between them there are some shared or overlapping powers. See *People v. Walker* (1988), 119 Ill. 2d 465, 473-75.

The judicial power includes the adjudication and application of law, the administration of the courts (*People v. Bainter* (1989), 126 Ill. 2d 292, 303), and the imposition of criminal sentences (*People v. Phillips* (1977), 66 Ill. 2d 412, 415). The legislature is vested with the power to enact laws, but it cannot constitutionally enact laws that unduly infringe upon the powers of the court. (*Bainter*, 126 Ill. 2d at 303.) The legislature may, however, enact laws complementing the authority of the judiciary. (*People v. Williams* (1988), 124 Ill. 2d 300, 306.) For example, Rule 1 contemplates that the supreme court rules shall be read together with the Civil Practice Law and the Code of Criminal Procedure of 1963. (*O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 281; 107 Ill. 2d R. 1.) If a legitimate legislative enactment irreconcilably conflicts with a supreme court rule, the rule will prevail. (*Walker*, 119 Ill. 2d at 475.) Were it otherwise, the judiciary would be nothing more than an extension of

the legislature. (*Walker*, 119 Ill. 2d at 475.) It is the court's solemn duty to protect the judicial power from legislative encroachment and to preserve the integrity and independence of the judiciary. *People v. Davis* (1982), 93 Ill. 2d 155, 161.

Declaring public policy is the domain of the legislature. Where a legislative enactment establishes a public policy preference not involving judicial administration, this court has sought to reconcile any conflicts between our rules and the statute. (*Walker*, 119 Ill. 2d at 475.) If there is an irreconcilable conflict between the statute and a rule, the rule will prevail.

The purpose of the Act is "to ensure the fair and compassionate treatment of victims and witnesses of violent crime." (Ill. Rev. Stat. 1985, ch. 38, par. 1402.) This is a policy determination in which the legislature is presumed to act in a constitutional manner, and the burden is on the party opposing the statute to demonstrate its invalidity. (*Walker*, 119 Ill. 2d at 474.) A statute should be construed to uphold its validity, if it can be reasonably done, and courts are to resolve doubts in favor of the statute. *Davis*, 93 Ill. 2d at 161.

Generally, the use of the word "shall" is mandatory, but this is not an inflexible rule. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 562.) Here, the statute is not mandatory in nature. It does nothing to indicate what weight should be given to the "victim impact" evidence, nor does it indicate what sentence should be imposed. Consequently, the contested language does not impermissibly infringe upon the powers of the court. Thus, we read the language of section 6 of the Act (Ill. Rev. Stat. 1985, ch. 38, par. 1406) as being directory. " 'A statute directing judicial action, although it may be expressed in preemptory [*sic*] terms, will be construed as permissive or directory only, where constitutional principles of separation of powers require a free and unrestrained exercise of judi-

cial discretion.' " (*Davis*, 93 Ill. 2d at 162, quoting 2A A. Sutherland, Statutory Construction §57.16, at 439 (4th ed. 1973).) Accordingly, section 6 of the Act does not violate the separation of powers clauses of the Illinois Constitution (Ill. Const. 1970, art. II, §1; art. VI, §1).

The defendant also argues that the use of victim impact evidence violates article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, §11 (limitation on penalties after conviction)). The State contends that the use of such evidence is not unconstitutional because the impact of a crime upon a victim relates directly to the seriousness of the offense.

Defendant presents no argument, other than conclusory statements, in support of this contention. A point raised but not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)) and is therefore waived. *Brown v. Tenney* (1988), 125 Ill. 2d 348, 362.

Defendant next maintains that "the trial court considered the testimony of the mother which amounted to considering in aggravation a specific element implicit in the offense of voluntary manslaughter." The State responds that the issue has been waived because the defendant failed to object at trial.

An objection at trial and a written post-trial motion raising the issue are required to preserve that issue for appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Here, the defendant did not object to this evidence at trial, nor did he include it in a written post-trial motion. Consequently, defendant has waived the issue.

Finally, the defendant argues that the trial court abused its discretion in imposing a 12-year term of imprisonment. The State argues that the trial court did not abuse its discretion.

The trial court's sentencing determination is entitled to great weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Absent an abuse of discretion, that determination will not be overturned. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375.) Here, the defendant waived his right to a jury and the judge presided over the trial. Thus, he heard and reviewed the evidence for and against a finding of guilt and was in the best position to determine the appropriate sentence. (*People v. Madej* (1985), 106 Ill. 2d 201, 222.) After reviewing the record, we cannot say that the trial court abused its discretion in imposing a 12-year term of imprisonment.

For the foregoing reasons, the judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*