THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SIDNEY TAYLOR, Defendant-Appellant.

First District (3rd Division)   No. 1—88—1390

Opinion filed June 24, 1992.—Rehearing denied September 25, 1992.

Rita A. Fry, Public Defender, of Chicago (Lisa Ottenfeld and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Michael J. Monaco, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Sidney Taylor, charged with first-degree murder and armed violence, was found guilty of voluntary manslaughter in a bench trial and sentenced to 10 years in prison.

On appeal, defendant questions (1) whether the trial court improperly limited the admission of relevant evidence pertaining to his defense theory; (2) whether the State carried its burden of proving that defendant did not act in self-defense or defense of others when he shot David Cameron; and (3) whether the trial court abused its discretion in sentencing defendant to 10 years in prison.

We affirm defendant's conviction.

Defendant lived on the first floor of a two-flat with his wife, Aislee, and their four children. His sister, Denise Taylor, lived on the second floor with her boyfriend, decedent David Cameron. On March 7, 1987, Denise and the decedent spent time drinking with various people.

At approximately 9 p.m. that evening, Denise and decedent argued in their apartment and decedent began choking Denise with his hands. Marion Taylor, a sister of Denise and defendant, was present and ran downstairs to get defendant. When defendant came upstairs, Denise was out of decedent's grasp but directed defendant to call the police. Decedent then pointed his finger in defendant's face and told him: "If you don't stay out of my business I'm going to f--- you up." Defendant went downstairs and called the police while decedent went from room to room packing a bag. Decedent came downstairs, opened the door to defendant's apartment and again warned defendant that "[the] next time you [get] in[to] my business I'm going to f--- you up." Defendant gave no reply.

Later that evening, at approximately 1:20 a.m. on March 8, 1987, decedent, his brother Bryant, and a friend, Jerome Baker, returned to the two-flat after several hours of continued drinking. Even though decedent had keys to Denise's apartment, he was unable to enter the bolted front door, and when there was no response to his knock, he waited in a car until he saw Robert Huston admitted to the building by defendant's wife, Aislee.

Decedent entered the vestibule behind Huston and began an argument after Huston told decedent that he was denied entry to Denise's apartment. When decedent attempted to mount the stairs, they began fighting.

Aislee left to wake defendant, while Bryant Cameron and Jerome Baker attempted to break up the fight. At this point, testimony of the eyewitnesses differs.

Defendant testified that he tried to stop the confrontation, then returned to his apartment and placed a gun in his back pocket because he believed decedent to be violent when intoxicated.

Defendant testified that the stairway was blocked by Aislee, and that decedent violently swung her off the stairs. Whereupon defendant took a position on the stairs to block decedent's path and advised decedent several times that Denise did not want him in her apartment and that the police were looking for him.

Decedent then struck defendant in the side of the head with his fist, knocking him down. Defendant claims that upon falling, he saw decedent reach for something at his beltline which defendant believed was a weapon. Defendant thereafter reached for his gun and fired a shot while in a prone position on the stairs.

Decedent was hit on his left side and ran outside. Unaware that decedent had been struck, defendant stated that he fired a second shot from the doorway, but did not aim or hit decedent with that shot. In his statement to police at the time of the shooting, defendant failed to mention that he saw decedent reach toward his waistband as if for a gun.

Defendant, his wife and Robert Huston testified at trial that Bryant Cameron searched his brother, removed something from him and took it back to his car. However, none of the statements given to police after the incident included that fact and Bryant Cameron denies that it occurred.

Bryant Cameron's testimony also differed in that he stated that defendant attempted to push decedent out of the hallway and that defendant fired four or five shots at decedent in rapid succession.

The trial court found defendant guilty of voluntary manslaughter based upon a sudden passion sprung from the serious provocation of being punched in the head by decedent.

Defendant's theory was self-defense or defense of others. Defendant believed decedent was prone to violence when drinking, knew decedent had been drinking throughout that day and believed decedent carried a gun with him that night. Therefore, defendant argues, testimony regarding decedent's violence, drinking and previous possession of a gun is relevant to defendant's theory of the case.

Defendant argues that the evidence improperly excluded was:

(1) Denise's testimony that she told family members to bolt the front door to prevent decedent from entering, which

defendant argues would go to his protective state of mind later when decedent attempted to climb the stairs to enter Denise's apartment;

(2) Denise's testimony as to whether decedent kept a gun in their apartment, which defendant claims would go to whether he believed decedent carried a gun that night;

(3) Denise's testimony as to previous beatings she received from decedent and whether defendant knew about those beatings, which defendant argues would establish decedent's violent tendencies and defendant's knowledge of them; and

(4) Cross-examination of Bryant Cameron to determine whether he knew his brother to assault Denise when he was drinking, which defendant argues also goes to decedent's tendency toward violence.

Defendant contends that because testimony on these matters was excluded, he was prevented from fully presenting his theory of defense and a new trial must be granted.

■ We recognize that a victim's violent and aggressive character may be used in support of a self-defense claim to explain a defendant's perceptions of and reactions to the victim's behavior. (*People v. Lynch* (1984), 104 Ill. 2d 194, 199-200, 470 N.E.2d 1018; *People v. Keefe* (1991), 209 Ill. App. 3d 744, 754, 567 N.E.2d 1052; *In re W.D.* (1990), 194 Ill. App. 3d 686, 706-08, 551 N.E.2d 357; *People v. Berry* (1988), 175 Ill. App. 3d 420, 427, 529 N.E.2d 1001.) Generally, such evidence is admissible once defendant raises a self-defense theory. *Lynch*, 104 Ill. 2d at 200.

■ We further recognize that evidence as to defendant's state of mind at the moment of the occurrence is material evidence probative of whether the defendant had a reasonable belief that the degree of force used was necessary to avert the particular harm posed. (*In re W.D.*, 194 Ill. App. 3d at 706.) But after examining the record, we find nothing that compels us to reverse the trial court because of exclusion of the disputed evidence.

■ The trial court properly excluded Denise's testimony because the questions posed were leading and defense counsel failed to adequately rephrase them or, in some instances, failed to lay a foundation for them.

The State properly objected that defense counsel's questions regarding Denise's instructions to bolt the door were leading. Moreover, instructions that she wished to bar decedent from the apartment could hardly be a basis to show defendant's state of mind such as would allow him to discharge a weapon in denying decedent entry.

The trial judge allowed Denise to testify that she had not seen decedent carry a gun prior to the night of the shooting, but did not allow her to testify whether a gun was kept in their apartment or whether she possessed a gun on the night of the shooting. The court excluded that testimony on grounds of relevancy and we agree with that ruling.

■ As to the cross-examination of Bryant Cameron on the causal effect of drinking and violence toward Denise, we recognize that a defendant should be given wide latitude in cross-examining State's witnesses (*In re W.D.*, 194 Ill. App. 3d at 706; *People v. Smylie* (1981), 103 Ill. App. 3d 679, 684, 431 N.E.2d 1130), but the questions must be within the scope of direct examination, and defendant's questions on this subject were not.

Although the trial judge might have allowed testimony as to decedent's violent tendencies, we find such exclusion to be harmless error. The trial judge was already adequately apprised of decedent's violent tendencies through testimony that Denise had been choked by decedent earlier in the evening and that defendant was twice threatened by decedent.

Therefore, we find that even though defendant alleges numerous evidentiary errors in this case, he fails to demonstrate the kind of prejudice that would compel reversal.

■ Defendant next contends that it was not proved beyond a reasonable doubt that he was not acting in self-defense or defense of others when he fired his weapon.

Whether an act is justified under the law of self-defense is for the trier of fact and depends on all of the surrounding facts and circumstances. (*People v. Felella* (1989), 131 Ill. 2d 525, 533, 546 N.E.2d 492; *People v. Woods* (1980), 81 Ill. 2d 537, 542, 410 N.E.2d 866; *People v. Graca* (1991), 220 Ill. App. 3d 214, 218, 580 N.E.2d 1328.) Where the testimony at trial is conflicting, a reviewing court will not substitute its judgment for that of the trial court, since it is the trial judge who observes the witnesses, weighs their credibility, draw inferences and resolves conflicts in the evidence to determine the reasonableness of defendant's actions. (*Felella*, 131 Ill. 2d at 534; *People v. Dawson* (1991), 213 Ill. App. 3d 335, 341, 572 N.E.2d 972.) The trial court's determination will not be disturbed unless the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to defendant's guilt. *Felella*, 131 Ill. 2d 525; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

A murder charge can be reduced to voluntary manslaughter if the killing occurred while defendant was under a sudden and intense pas-

sion resulting from serious provocation or if the defendant believes the circumstances justify the killing but his belief is unreasonable. *Berry*, 175 Ill. App. 3d at 428.

In reviewing the evidence, the trial court specifically stated that it found the killing unjustified, that it was not based upon defendant's unreasonable belief and that defendant was not acting in self-defense.

We agree with the trial court's determination.

■ Defendant next argues that the trial court abused its discretion in sentencing him to 10 years because the court (1) improperly considered decedent's death as an aggravating factor and implied that the legislature erred in designating voluntary manslaughter as a Class 1 felony rather than a Class X felony, and (2) failed to give sufficient consideration to mitigating factors.

The trial court's alleged misstatements were:

"This [is] a big crime, second only to murder and a life has been taken.

\* \* \*

One person less has been the result of the actions, and life would be deprecated if less than a sentence of imprisonment were imposed.

\* \* \*

[Homicide] is in a Class 1 category, but it is actually second only to murder, and in many respects, it exceeds the Class X category of offenses."

The trial court's sentencing determination is entitled to great weight and will not be overturned absent an abuse of discretion. (*Felella*, 131 Ill. 2d at 541.) In sentencing, the court may consider as an aggravating factor the force employed and the physical manner in which the victim's death was brought about, but it may not consider the death itself as an aggravating factor. *People v. Martin* (1988), 119 Ill. 2d 453, 459, 519 N.E.2d 884; *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138; *People v. Smith* (1991), 214 Ill. App. 3d 327, 343, 574 N.E.2d 784.

However, as this court has recently stated, "it is unrealistic to suggest that the judge in sentencing the defendant must avoid mentioning the fact that someone has died or risk committing reversible error." *People v. Green* (1991), 209 Ill. App. 3d 233, 248, 568 N.E.2d 92.

The record in the present case establishes that the court carefully reviewed the evidence, passed sentence and in the process mentioned the death of the victim. These statements, however, do not amount to

an abuse of discretion since the record does not establish that the trial court considered it as an aggravating factor.

Defendant also charges the sentence was improperly imposed because the court did not give sufficient consideration to mitigating factors and the sentence was greater than in cases with similar facts. We find the trial court was cognizant of the mitigating factors in this case and the record establishes no abuse of discretion. The court's 10-year sentence fell within the middle range of the 5- to 15-year term for voluntary manslaughter and we do not find it excessive.

Accordingly, we affirm defendant's conviction and sentence.

Affirmed.

RIZZI and TULLY, JJ., concur.