# Illinois Official Reports

## Appellate Court

***People v. Haynes*, 2015 IL App (3d) 130091**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRENCE D. HAYNES, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0091 |
| Filed<br>Rehearing denied | January 13, 2015<br>February 26, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The summary dismissal of defendant's *pro se* postconviction petition alleging that the prosecution suborned perjury of a proffered witness during his murder trial was reversed and the cause was remanded for second-stage proceedings, since defendant admitted shooting the victim but testified that he feared for his life and evidence that the victim had a gun on his person was relevant to defendant's defense; furthermore, defendant alleged in his petition that an assistant State's Attorney who assisted in defendant's case was related to a prosecution witness who was the only eyewitness to the shooting and the witness provided defendant with an affidavit stating that he was told by his cousin not to mention that the victim had a gun. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 99-CF-338; the Hon. Kathy Bradshaw-Elliott, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Kerry J. Bryson (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Lisa Madigan, Attorney General, of Chicago (Sameena Mohammed (argued), Assistant Attorney General, of counsel), for the People.

Panel

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice Lytton specially concurred, with opinion.

## OPINION

¶ 1    Defendant, Terrence D. Haynes, filed a *pro se* petition for postconviction relief in which he claimed the prosecution suborned perjury of a proffered witness during his criminal trial. The petition was summarily dismissed, and defendant appeals. We reverse and remand for second-stage proceedings.

¶ 2                                    FACTS

¶ 3    The background facts of this case have previously been set out. See *People v. Haynes*, 331 Ill. App. 3d 482 (2002). Accordingly, we will set forth only those facts necessary for the disposition of this particular appeal.

¶ 4    Following the shooting death of Cezaire Murrell, the State charged defendant with first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 1998)). As part of its case, the State presented the testimony of two eyewitnesses. One of the eyewitnesses, 11-year-old Marcus Hammond, was examined by Assistant State's Attorney Frank Astrella. Marcus testified that he saw Murrell and defendant standing about five feet apart near the front porch of a residence. As he watched, he saw defendant pull a gun from "the back of his body" and shoot Murrell. The following colloquy took place between Hammond and Astrella.

"Q. When you saw the defendant holding the gun like that, what did [Murrell] do?
A. Came towards him.
Q. Okay. Did you see anything in [Murrell's] hands?
A. No.
Q. Did you see him holding a gun?
A. No."

¶ 5    The second occurrence witness, eight-year-old Penny Hammond, testified that she looked out the front door and saw defendant arguing with another man in front of the residence. Defendant yelled at her to go back in the house. Penny went to the back of the house. When she reached the back porch, she heard a gunshot.

¶ 6    Defendant testified that on the night of the incident, Murrell approached him and demanded money he thought defendant owed him. Defendant told Murrell that he did not know what he was talking about. According to defendant, Murrell lifted his shirt, revealing a gun in his waistband. Defendant then picked up a gun that was on the porch underneath a shirt and put it in his back pocket. Murrell then ran up on the porch. Murrell had one hand on his gun and he was reaching for defendant with the other hand. Defendant pulled out the gun, closed his eyes and started shooting. Defendant then ran away, leaving both the gun he used in the shooting and Murrell's gun behind. No guns were recovered from the scene. Defendant testified that he was afraid Murrell was going to shoot and kill him.

¶ 7    At the conclusion of the trial, the jury found defendant guilty of first degree murder. The trial court sentenced defendant to 45 years in the Department of Corrections. Ultimately, we affirmed defendant's conviction and sentence (*People v. Haynes*, 2011 IL App (3d) 090513-U).

¶ 8    Defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)). In the petition, defendant alleged that his due process rights were violated when the State failed to disclose in discovery that Marcus Hammond was the cousin of Michael Jeneary, an assistant State's Attorney who acted as co-counsel in prosecuting the case. Attached to the petition was a letter from Jeneary acknowledging that Marcus was his cousin and admitting that he did not disclose the relationship. The trial court dismissed the petition *sua sponte*. The court stated that Jeneary "probably should have" disclosed the relationship, but since it concerned only bias and witness credibility, the court would not order a new trial. In a 2 to 1 decision, we affirmed the dismissal of defendant's section 2-1401 petition. *People v. Haynes*, 2013 IL App (3d) 100758-U.

¶ 9    Defendant filed a *pro se* postconviction petition alleging that defendant was denied due process where Jeneary suborned perjury when Hammond testified that the victim, Murrell, was not armed with a gun at the time of the shooting. Attached to the petition was an affidavit from Hammond stating, in its entirety:

   "I was the eyewitness in the case *People v. Haynes* case # 99-CF-338[.] [I]n this case my cousin Michael Todd Jeneary was the State's Attorney. I testified in open court that there was only one gun but it really was two, the guy that got shot also had a gun when he got shot but I was told not to say that he had a gun."

¶ 10   The trial court summarily dismissed defendant's petition. The court found that Hammond's affidavit did not say that Murrell was holding a gun, nor did defendant testify Murrell was holding a gun. Instead, defendant stated that he saw a gun in Murrell's waistband. The court concluded that there was no reasonable probability that the outcome of defendant's trial would have been different had Hammond testified to seeing Murrell with a gun. Defendant appeals.

¶ 11                                    ANALYSIS

¶ 12   Summary dismissal is appropriate only where the "petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). To survive summary dismissal, the petition must state merely the "gist" of a constitutional claim. *People v. Collins*, 202 Ill. 2d 59, 66 (2002). Defendant claims that he was denied his constitutional right to due process where Jeneary suborned perjury when Hammond testified that Murrell was not armed with a gun at

the time of the shooting. At the first stage, the petition's facts are taken as true. *Collins*, 202 Ill. 2d at 66.

¶ 13    "A conviction obtained by the knowing use of false testimony will be set aside if there is a reasonable likelihood that the false testimony could have affected the verdict." (Internal quotation marks omitted.) *People v. Wright*, 2013 IL App (1st) 103232, ¶ 47. Because Hammond was the only eyewitness to the actual shooting, other than defendant, we find his sworn allegation that he "was told not to say that he (Murrell) had a gun" establishes the gist of a constitutional claim.

¶ 14    Defendant's entire defense at trial revolved around the theory of self-defense and his testimony that Murrell had a gun on his person. Hammond, however, testified at trial that he did not see Murrell holding a gun or anything in Murrell's hands. This testimony was extremely damaging to defendant's defense. Hammond's affidavit establishes, at least for purposes of first-stage proceedings, that this damaging testimony was untrue. Hammond, as the sole witness to the shooting, was the key witness in this case and thus there is a reasonable likelihood that his curtailed testimony affected the verdict.

¶ 15    The State would have us believe that summary dismissal was appropriate because the affidavit reveals only that *someone* instructed Hammond not to testify that Murrell had a gun. Specifically, the State notes that the affidavit does not expressly assert that it was the prosecution that instructed Hammond to lie. We reject this reasoning. Read as a whole, we believe the affidavit clearly implies that Jeneary was the one who instructed Hammond. There is no reason for Hammond to even mention Jeneary or their relationship if it was someone else who had instructed him. Moreover, we note that Hammond's identification of Jeneary and their relationship is found in the sentence directly preceding his claim that he was instructed to lie. Most significantly, however, we note that the instant case involves first-stage proceedings and thus the affidavit was not drafted by a lawyer. Courts are to give liberal construction to *pro se* petitions at the first stage, reviewing them "with a lenient eye, allowing borderline cases to proceed." (Internal quotation marks omitted.) *People v. Hodges*, 234 Ill. 2d 1, 21 (2009).

¶ 16    The State would also have us believe that summary dismissal was appropriate because Hammond did not specifically testify at trial that "Murrell did not have a gun." We disagree. Omitting facts due to instruction from a prosecuting entity renders any remaining testimony unreliable just as much as expressly lying due to instruction from a prosecuting entity. Both situations impugn the integrity of the judicial system and do not comport with the standards of justice.

¶ 17    Moreover, the issue is not whether any of Hammond's *specific* testimony is contradicted. Instead, the issue is that the affidavit, if true, in effect renders Hammond's *entire* testimony unreliable.[1] Instructions to not mention that Murrell also had a gun essentially created a false backdrop or foundation for all of Hammond's testimony. For example, had Hammond been

---

[1]We acknowledge the principle discussed in the special concurrence–credibility determinations are to be made by the trier of fact. *Infra* ¶ 24. We believe, however, that a witness's omission of certain facts due to prosecutorial instruction renders the witness's entire testimony inherently not credible. Thus, the pertinent question during further postconviction proceedings is not whether Hammond's testimony is credible (*infra* ¶ 25) but, instead, whether Hammond's allegations contained within his affidavit are actually true. Again, because we are at first stage, we accept the affidavit as true. *Collins*, 202 Ill. 2d at 66.

- 4 -

free to testify truthfully when asked if Murrell had anything in his hands Hammond might have replied: No, Murrell was not holding a gun, but Murrell did have a hand on a gun. Or, Hammond could have said: Yes, Murrell was holding a gun.[2] At trial, however, Hammond simply replied: "No." This response was consistent with the overarching theme "not to say that he (Murrell) had a gun." Viewing the totality of the circumstances, we hold Hammond's entire trial testimony is unreliable. We also hold more broadly that a witness's testimony is entirely unreliable if he is under instructions from a prosecuting entity to lie or to omit certain facts while testifying.

¶ 18    In coming to this conclusion, we reject the trial court's reasoning that summary dismissal was warranted due to the fact that defendant did not expressly testify at trial that Murrell was *holding* a gun. Initially, we note that defendant at one point did testify that Murrell had one hand on his gun and he was reaching for defendant with the other hand. While holding a gun may arguably be factually different than having one hand on a gun, the same legal question remains when confronted with either factual situation–whether an individual reasonably believes that his conduct is necessary to defend himself against another's imminent use of unlawful force (720 ILCS 5/7-1(a) (West 2012)).

¶ 19    Defendant admitted to shooting Murrell; however, he testified that he feared for his life. Thus, the above legal question was the sole issue at trial. Corroborating evidence that Murrell did in fact have a gun, even if only on his person, is highly relevant to defendant's defense. Likewise, the prosecution's purported act of depriving defendant of such testimony is highly prejudicial. The weight to be given to any factual distinction between Murrell holding a gun or alternatively having a hand on a gun is best left for the trier of fact to decide. *People v. Felella*, 131 Ill. 2d 525, 534 (1989) (the issue of self-defense is always a question of fact determined by the trier of fact).

¶ 20    For the reasons stated, we reverse the trial court's summary dismissal of defendant's *pro se* postconviction petition. The matter is remanded for appointment of postconviction counsel and second-stage postconviction proceedings.

¶ 21    Reversed and remanded.

¶ 22    JUSTICE LYTTON, specially concurring.

¶ 23    I agree with the majority's reversal of the trial court's summary dismissal of defendant's *pro se* postconviction petition. However, I believe that the majority has gone too far in holding that "Hammond's entire trial testimony is unreliable." *Supra* ¶ 17.

¶ 24    In reviewing a postconviction petition, it is the role of the trial court to act as the trier of fact, making credibility determinations, deciding the weight to give testimony and evidence, and resolving evidentiary conflicts. See *People v. Domagala*, 2013 IL 113688, ¶ 34; *People v. Hernandez*, 298 Ill. App. 3d 36, 40 (1998). Additionally, questions concerning the reliability of a witness's testimony are not to be decided at the first stage of postconviction proceedings, but

---

[2]Again, we remind the State that Hammond's failure to specifically articulate what exactly he would have testified to at trial does not justify dismissal at first stage. Hammond's affidavit is sufficient to survive first stage due to the fact it contains an allegation that he was under instruction, inferentially by a prosecuting entity, to omit certain highly relevant facts. Omission of said facts was extremely prejudicial to defendant's claim of justification or a finding of murder in a lesser degree at trial.

at the second stage if the judge ruling on the postconviction petition presided over the defendant's trial, or at the third stage if someone other than the trial judge rules on the petition. See *Hernandez*, 298 Ill. App. 3d at 40.

¶ 25 While I agree with the majority that defendant's postconviction petition is sufficient to survive the first stage of postconviction proceedings, I disagree with the majority's characterization of Hammond's testimony as "unreliable." The reliability or unreliability of Hammond's testimony is to be determined by the trial court, acting as the trier of fact, at the second or third stage of postconviction proceedings. *Domagala*, 2013 IL 113688, ¶ 34; *Hernandez*, 298 Ill. App. 3d at 40. It was premature and inappropriate for the majority to reach such a conclusion in this case.