2021 IL App (1st) 191645-U

No. 1-19-1645

Order filed June 30, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 8178 |
| | ) | |
| KEVIN LAMB, | ) | Honorable |
| | ) | Colleen Hyland, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We reverse and remand for further proceedings where the trial court had an obligation to inquire into the nature of the educational programming defendant participated in while in pretrial custody at the county jail to determine whether to award defendant additional sentencing credit under section 3-6-3(a)(4) of the Unified Code of Corrections.

¶ 2    Defendant, Kevin Lamb, proceeding *pro se* before the trial court, pled guilty to four counts of burglary (720 ILCS 5/19-1(a) (West 2018)) in exchange for concurrent, six-year sentences on all four charges. Prior to accepting the plea deal, defendant inquired whether he was entitled to

additional sentencing credit for his "work time" in the Cook County Department of Corrections (CCDOC). The court responded that if defendant had been to the penitentiary two or more times, "they won't give you the additional credit." The court reaffirmed at defendant's sentencing hearing that defendant was not entitled to "good conduct" credit at the CCDOC "under the statute" because of his background. The court ultimately imposed the agreed-upon six-year sentences. Defendant did not file a direct appeal.

¶ 3     Months later, defendant filed in the circuit court motions seeking to correct his mittimus asserting that he was eligible for additional sentencing credit based on his participation in various educational courses while he was awaiting trial at the CCDOC. The court denied his motions finding that it was within its discretion to grant additional presentence custody credit and that defendant was not entitled to additional credit.

¶ 4     On appeal, defendant, now represented by counsel, asserts that the court erred when it failed to determine whether he was entitled to additional sentencing credit for the educational programs he completed while in pretrial detention. Defendant contends that the court had the statutory authority to award this credit and it had a responsibility to determine whether defendant was eligible for the credit. Defendant maintains that we should remand this cause for an evidentiary hearing for the circuit court to determine whether the programs he completed meet the statutory requirements for additional sentencing credit. For the reasons that follow, we reverse the judgment of the circuit court and remand so that the court may determine whether defendant is entitled to additional sentencing credit.

¶ 5                                  I. BACKGROUND

¶ 6    Defendant was charged with six different offenses stemming from incidents that took place from June 2016 through April 2017.[1] Five of the charges were related to burglaries and the sixth was a charge for fleeing and eluding. Following extensive admonishments by the trial court, defendant elected to dismiss his court-appointed attorney and proceed *pro se*. Throughout the remainder of the proceedings, the State and defendant discussed a plea deal. In discussing the deal with the State and the court, defendant asked the court, "I just wanted to know will you require work time [*sic*]? I got my culinary arts certificate from the work program CCDOC and—." The court stated that if defendant had been to the penitentiary two or more times, which defendant had, "they won't give you the additional credit."

¶ 7    Defendant eventually agreed to accept the State's offer, pleading guilty to four of the burglary charges in exchange for concurrent, six-year sentences on all four charges. Defendant was subject to Class X sentencing because of his background (730 ILCS 5/5-4.5-95(b) (West 2018)), and thus the six-year sentence was the minimum the State could offer (730 ILCS 5/5-4.5-25 (West 2018)). In addressing defendant's presentence custody credit, defendant stated that he was arrested on May 8, 2017. The State confirmed that date of arrest and represented that defendant had 585 days of presentence custody credit. After defendant pled guilty to the four burglary charges, the State read the factual basis for the plea into the record.

¶ 8    The court then asked defendant whether he had anything to say in mitigation. Defendant responded: "No. I ain't [*sic*]. You already said I couldn't get no good conduct [*sic*] CCDOC so." The court replied: "Under the statute, sir, because of your background, you are not entitled to it

---

[1]The charging instruments are not included in the record filed on appeal.

***." The court then imposed the agreed-upon concurrent six-year sentences. Defendant did not file a direct appeal.

¶ 9    Six months later, defendant filed in the circuit court a "Petition for Order Nunc Pro Tunc County Jail Good Behavior Allowance." In the petition, defendant sought an order stating that he was entitled to " 'Day-for-day' of good behavior allowance for each day of incarceration in the County Jail before sentencing." Defendant noted that he was credited with 585 days of presentence custody credit, but asserted that pursuant to sections 5-4.5-100 and 3-6-3 of the Unified Code of Corrections (Code), he was entitled to 1170 days of credit, or double the amount of calculated credit. See 730 ILCS 5/5-4.5-100 (West 2018), 730 ILCS 5/3-6-3 (West 2018). Defendant attached to his petition requests he filed with the Cook County Sheriff's Office for verification of his certificates for the barbershop, sanitation, and culinary arts educational programs.

¶ 10    In ruling on defendant's petition, the court found that it was within the court's discretion as to whether to grant additional custody credit. The court denied the petition.

¶ 11    Defendant then filed in the circuit court a "Motion to Correct Mittimus Pursuant to Illinois Supreme Court Rule 472." In the motion, defendant asserted that while he was in custody at the CCDOC, he participated in a culinary arts program that made him eligible for an extra half day of credit for each day he participated in the program. Defendant requested that the court calculate the amount of presentence credit he was due as a result of his participation in this program. In this motion, defendant did not mention the barbershop or sanitation program, and did not include any attachments.

¶ 12    In denying defendant's motion, the court stated that "there was no additional credit that was brought to the Court's attention or credit based upon the amount of cases that he had in front

of me and the negotiations that the State and the defendant had. He is not entitled to that additional credit." Defendant now appeals.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, defendant contends that the court erred in denying his motion pursuant to Supreme Court Rule 472 (eff. May 17, 2019)[2] where he was potentially entitled to additional presentence custody credit for his participation in various educational programs while in pretrial custody at the CCDOC. He asserts that the trial court mistakenly stated that defendant was either not entitled to additional credit or that the court was not permitted to award the credit. Defendant maintains that we should remand this matter for an evidentiary hearing where he can present evidence of the educational programs and the court can determine whether he is statutorily entitled to additional presentence custody credit.

¶ 15                                    A. Jurisdiction

¶ 16    At the outset, we note that defendant's second post-judgment motion was filed pursuant to Supreme Court Rule 472 (eff. May 17, 2019). Under Rule 472, the circuit court retains jurisdiction to correct certain sentencing errors, including errors in the calculation of presentence custody credit. Ill. S. Ct. R. 472(a)(3) (eff. May 17, 2019). "Where a circuit court's judgment pursuant to this rule is entered more than 30 days after the final judgment, the judgment constitutes a final judgment on a justiciable matter and is subject to appeal in accordance with Supreme Court Rule 303." Ill. S. Ct. R. 472(b) (eff. May 17, 2019). Here, the court's sentence, and thus its final judgment,[3] was entered on December 13, 2018. The court denied defendant's motion pursuant to

---

[2]Defendant does not challenge the court's ruling on his "Petition for Order Nunc Pro Tunc County Jail Good Behavior Allowance," and the court's ruling on the Rule 472 motion is the only ruling included in the notice of appeal.

[3]Defendant did not file any post-sentencing motions.

Rule 472 on June 28, 2019. Thus, the judgment under Rule 472 was entered more than 30 days after the final judgment and Rule 303 controls this appeal.

¶ 17    Under Supreme Court Rule 303(a)(1) (eff. Jul. 1, 2017), in order for a defendant to perfect an appeal, the defendant must file a notice of appeal with the circuit court within 30 days of the entry of the final judgment appealed from. In this case, as noted, the court entered its order denying defendant's "Motion to Correct Mittimus Pursuant to Illinois Supreme Court Rule 472" on June 28, 2019. Defendant's notice of appeal is file-stamped on August 5, 2019, 38 days after the trial court's entry of the order.

¶ 18    Noting this defect, this court entered an order directing the parties to file supplemental briefing on the issue of jurisdiction. While that briefing was underway, defendant filed a motion for a supervisory order in the supreme court seeking an order directing this court to treat defendant's untimely filed notice of appeal as a properly perfected appeal. On May 20, 2021, the supreme court entered a supervisory order allowing defendant's motion and granting this court jurisdiction. Accordingly, we find that we have jurisdiction to address the merits of this appeal.

¶ 19                              B. Mootness

¶ 20    We next observe that the State contends that defendant's claims are moot because he has already been released from the Illinois Department of Corrections (IDOC) and is currently serving his three-year term of mandatory supervised release (MSR).[4] The State asserts that defendant's MSR period cannot be altered and therefore this court could not reduce the time he must spend on

---

[4]Defendant was released from IDOC custody on April 28, 2020. His three-year term of MSR will end on April 28, 2023. *Illinois Department of Corrections-Inmate Search*, Ill. Dep't of Corrs., https://www2.illinois.gov/idoc/Offender/pages/inmatesearch.aspx (last visited June 10, 2021). This court may take judicial notice of information appearing on the IDOC website. *People v. Peacock*, 2019 IL App (1st) 170308, ¶ 4 n.1.

MSR and thus cannot grant defendant any relief. Defendant responds that his claims are not moot because he is not seeking to shorten his MSR term, but is instead seeking additional sentencing credit, which would retroactively shorten his prison term and therefore advance the date that his MSR term would have commenced and, thus, functionally advance the date that his MSR term will terminate.

¶ 21    In support of his contention that his claims are not moot, defendant relies on *People v. Montalvo*, 2016 IL App (2d) 140905. In *Montalvo*, as here, the defendant asserted that the trial court should have awarded him sentencing credit for his participation in pretrial educational programs. *Id.* ¶ 1. Despite the fact that the defendant had been released from prison by the time his appeal reached this court, the *Montalvo* court conclusively found that the appeal was not moot. *Id.* ¶¶ 14-15. The court observed that "[w]here a defendant has been released from prison but remains on [MSR], a reduction in his prison sentence would affect how long he could be reincarcerated for a violation of his MSR." *Id.* ¶ 14. The court therefore concluded that "a challenge to the length of a prison term is not moot if it is brought before the defendant has completed his MSR." *Id.*

¶ 22    We agree with the decision in *Montalvo* that defendant's claims are not moot because he is still serving his MSR term. Despite the State's arguments to the contrary, the claims defendant raises challenge the length of his prison sentence. He is not seeking to shorten the absolute length of his MSR term, as the State suggests, but seeking to shorten only its functional length by having the circuit court award him sentencing credit, thus shortening the length of his already-served prison term, and advancing the commencement date of his term of MSR, thus also advancing the termination date of his MSR. Accordingly, we find, in line with *Montalvo*, that this court may provide defendant effective relief, and thus his claim is not moot. See *People v. Jackson*, 199 Ill. 2d 286, 294 (2002).

¶ 23                                    C. Section 3-6-3

¶ 24    We now turn to the merits of this appeal. As noted, defendant asserts that under section 3-6-3, the circuit court had the authority and responsibility to determine whether he was entitled to additional sentencing credit based on the educational programs he completed while in pretrial custody. Section 3-6-3 of the Code provides, in pertinent part, that an inmate in pretrial detention may earn sentencing credit for his successful completion of "full-time, 60-day or longer *** educational program *** life skills course, or re-entry planning provided by the county department of corrections or county jail." 730 ILCS 5/3-6-3(a)(4) (West 2018). Section 3-6-3 further provides that the calculation of this county program credit shall take place at sentencing as provided in section 5-4.5-100 of the Code. *Id.* Section 5-4.5-100(c-5) provides that the trial court shall give the defendant credit for successfully completing county programming while in custody prior to the imposition of the sentence at the rate specified in section 3-6-3. 730 ILCS 5/5-4.5-100(c-5) (West 2018). Under this statutory scheme, defendant asserts that when he brought his participation in educational programs to the attention of the trial court prior to sentencing, the trial court was required to inquire into the nature of the programs to determine whether they met the requirements of section 3-6-3, and, if so, to award defendant presentence custody credit in accordance with that section and section 5-4.5-100. Defendant contends that the trial court repeatedly disregarded its responsibility to assess the validity of the programs and determine the amount of presentence credit, and relied on a variety of incorrect and inconsistent explanations in denying defendant's request for credit.

¶ 25                                    i. *Standard of Review*

¶ 26    We first observe that the parties disagree as to the standard of review to be applied in this case. Defendant asserts that his claims raise an issue of statutory interpretation, which we should

review *de novo*. The State contends, however, that even if defendant were eligible for additional custody credit, it is within the discretion of the trial court to determine whether to award such credit. The State asserts that we should therefore review the trial court's ruling for abuse of discretion. Despite the State's assertions, however, it is well-settled that where a defendant seeks programming credit pursuant to section 3-6-3(a)(4), the question is one of statutory interpretation which we review *de novo*. See, *e.g.*, *People v. Washington*, 2019 IL App (1st) 172372, ¶ 8, *Montalvo*, 2016 IL App (2d) 140905, ¶ 17.

¶ 27                                    ii. Public Act 100-3

¶ 28    We note that while defendant's case was proceeding through the trial court, but before defendant accepted the plea agreement and was sentenced, the General Assembly amended section 3-6-3(a)(4). Pub. Act 100-3 (eff. Jan. 1, 2018) (amending 730 ILCS 5/3-6-3(a)(4)). This amendment removed the restriction that prevented Class X offenders from receiving credits provided by section 3-6-3(a)(4). *Id.* This court has recognized that this amendment applies only prospectively, and thus a Class X offender who completed educational programing prior to January 1, 2018, would not be eligible for enhanced sentencing credit under section 3-6-3(a)(4). *Sharp v. Baldwin*, 2020 IL App (2d) 181004, ¶ 12.

¶ 29                                iii. Additional Sentencing Credit

¶ 30    When defendant brought his participation in educational programming to the attention of the trial court on two separate occasions, the court informed defendant that he was not eligible for additional credit because he had been to the penitentiary two or more times. This assessment seemed to be based on the prior version of section 3-6-3(a)(4) that precluded Class X offenders from receiving additional credit. The version of section 3-6-3(a)(4) that removed the bar for Class X offenders to receive additional credit became effective on January 1, 2018. Defendant agreed to

accept the State's plea agreement and was sentenced in December 2018. The State concedes that the trial court "likely" relied on the previous version of section 3-6-3(a)(4) in denying defendant's request for sentencing credit at trial. The State contends, however, that the trial court nonetheless did not err in denying defendant's request for additional credit. The State asserts that defendant failed to present evidence that the programs he participated in satisfied the requirements of section 3-6-3(a)(4), specifically that they were "full-time 60-day or longer substance abuse program, educational program, behavior modification program, life skills course, or re-entry planning." 730 ILCS 5/3-6-3(a)(4) (West 2018). The State also asserts that defendant was not entitled to credit because he was not an "inmate" at the time he completed the programs because he was in the county jail, rather than the IDOC.

¶ 31    We may quickly dispense with the State's second argument. Section 3-6-3(a)(4) provides:

>    "The rules and regulations shall also provide that sentence credit, subject to the same offense limits and multiplier provided in this paragraph, may be provided to an inmate *who was held in pre-trial detention* prior to his or her current commitment to the Department of Corrections and successfully completed a full-time, 60-day or longer substance abuse program, educational program, behavior modification program, life skills course, or re-entry planning provided by the *county department of corrections or county jail*. (Emphases added.) 730 ILCS 5/3-6-3(a)(4) (West 2018).

Thus, by the plain language of the statute, defendant would be entitled to enhanced sentencing credit for qualifying programs that he completed while in CCDOC. See also *Washington*, 2019 IL App (1st) 172372, ¶ 12 ("Section 3-6-3(a)(4) permits awarding enhanced programming credit provided for in section 3-6-3(a)(2.1) if the prisoner participates in certain programs while in CCDOC ***.").

¶ 32    The State's reliance on *People v. Lindsey*, 199 Ill. 2d 460 (2002) in support of this contention is misplaced. The defendant in *Lindsey* was sentenced to 364 days of work release and confined to the Vermillion County Public Safety Building. *Id.* at 461. On appeal to the supreme court, he claimed that, pursuant to section 3-6-3 of the Code, the trial court was required to award him day-for-day credit for time served in pretrial custody against his term of "periodic imprisonment" at the county building. *Id.* at 478. The supreme court rejected defendant's claim finding that he was not entitled to credit because he was not an "inmate" of the IDOC, but rather was confined to a county facility. *Id.* at 478-79. The court concluded that The County Jail Good Behavior Allowance Act applied to defendant's situation, rather than section 3-6-3. *Id.* at 479. Thus, unlike defendant in this case, the defendant in *Lindsey* was never in IDOC custody. He was therefore never an inmate and had no term of imprisonment against which his sentencing credit could be applied. Here, it is undisputed that defendant served a term of imprisonment in IDOC custody. The distinction drawn by the supreme court in *Lindsey* was based on where the defendant ultimately served his sentence, rather than where the defendant earned the credit. *Lindsey* is thus inapplicable to the circumstances at bar.

¶ 33    With regard to the State's first argument, we observe that it highlights the issue defendant seeks to address. Defendant asks this court to remand this case to the circuit court so that defendant may present evidence on the classes he participated in and give the court an opportunity to determine whether those programs meet the requirements of section 3-6-3(a)(4). The limited information contained in the record does not allow us to make that determination on appeal. The attachments to defendant's posttrial motions indicate that he did participate in some programming while in CCDOC, but it is unclear whether those programs were "full-time, 60-day or longer substance abuse program, educational program, behavior modification program, life skills course,

or re-entry planning." 730 ILCS 5/3-6-3(a)(4) (West 2018). This is a determination that the trial court should have made at sentencing. Section 3-6-3(a)(4) provides that "[c]alculation of this county program credit *shall* be done at sentencing as provided in Section 5-4.5-100 of this Code and *shall* be included in the sentencing order." (Emphases added.) *Id.* Section 5-4.5-100(c-5) likewise provides that "[t]he trial court *shall* give the defendant credit for successfully completing county programming while in custody prior to imposition of sentence at the rate specified in Section 3-6-3." (Emphasis added.) 730 ILCS 5/5-4.5-100(c-5) (West 2018).

¶ 34   As this court stated in *Montalvo*, section 3-6-3(a)(4) places "the obligation on the trial court to determine whether defendant was eligible for sentencing credit and, if so, how much." *Montalvo*, 2016 IL App (2d) 140905, ¶ 20. The trial court in this case failed to do so, first incorrectly telling defendant that he was not eligible for credit because of his background, then stating that it was within the court's discretion to determine whether to award the credit, and then incorrectly stating that defendant's request for credit was never brought to its attention. As noted, the court's determination that defendant was not entitled to additional credit because of his background may have been based on the version of section 3-6-3(a)(4) that existed prior to Public Act 100-3. With regard to whether the trial court had discretion as to whether to award this credit, we observe that the statute provides that the trial court "shall" determine whether the defendant is eligible for credit. The word "shall" is generally construed as mandatory language. *People v. Felella*, 131 Ill. 2d 525, 539 (1989); see also *Montalvo*, 2016 IL App (2d) 140905, ¶ 20 ("the trial court was *required* to give defendant credit for his successful completion of the anger management program, at the rate specified in section 3-6-3.") (Emphasis added.) Finally, the court's suggestion that the request for credit had not been brought to its attention is clearly contradicted by the record where defendant specifically asked if he would be eligible for additional sentencing credit before

accepting the plea agreement and brought the issue to the court's attention again during sentencing. Nonetheless, even if defendant had failed to bring the issue to the trial court's attention prior to sentencing, a defendant may raise a claim for sentencing credit at any time. See *People v. Roberson*, 212 Ill. 2d 430, 440 (2004) (finding that the defendant did not waive issue regarding sentencing credit through his failure to raise it earlier).

¶ 35    Lastly, the State asserts that the award of credit is committed to the discretion of the IDOC, and that even if the trial court awarded defendant the enhanced sentencing credit he sought, the ultimate determination as to whether defendant received the credit is left to the IDOC. Although the State is correct that the IDOC makes the ultimate eligibility determination, the trial court is nonetheless mandated to award the credit and include the requested credit in the sentencing order. See *People v. James*, 2017 IL App (1st) 143036, ¶ 61. Accordingly, we find that the trial court should have made such a determination in this case. Although this court may make an eligibility determination and award defendant credit without remand to the trial court, the record in this case is not sufficiently developed to allow this court to do so. See *Montalvo*, 2016 IL App (2d) 140905, ¶ 20. Accordingly, we remand this matter to the trial court to determine whether defendant is entitled to additional sentencing credit for his participation in educational programs at CCDOC, and, if so, how much.

¶ 36                               III. CONCLUSION

¶ 37    For the reasons stated, we reverse the judgment of the circuit court and remand for further proceedings consistent with this order.

¶ 38    Reversed and remanded.