2024 IL App (2d) 230094-U
No. 2-23-0094
Order filed February 15, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-2589 |
| TARELL D. GREEN, a/k/a Tarrell D. Green, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Arguably, defendant's fully negotiated guilty plea, which granted him credit for time spent in presentencing custody but did not address any other credit, constituted a waiver of credit for educational programs he participated in while in custody. However, we need not decide the waiver issue, because even if there was no waiver, defendant has failed to show that the programs met the requirements for sentencing credit.

¶ 2    Defendant, Tarell D. Green, a/k/a Tarrell D. Green,[1] appeals from the denial of his motion to award him sentencing credit for participation in educational programs while in custody in the Lake County Jail before sentencing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was arrested on November 8, 2018. On August 5, 2021, he entered a negotiated guilty plea to a single count of attempted aggravated battery (720 ILCS 5/8-4(a), 12-3.05(b)(1) (West 2014)). In exchange for his plea, defendant was sentenced to a 14-year prison term with day-for-day good conduct credit, and other charges were dismissed. In describing the plea agreement, the prosecutor noted that defendant "would be given 1,003 days of pretrial incarceration credit." After unsuccessfully moving to reduce his sentence, defendant filed a notice of appeal. We dismissed the appeal on the basis that, under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), defendant could not appeal from a judgment entered on his negotiated guilty plea without first moving to withdraw his plea. *People v. Green*, 2022 IL App (2d) 210685-U, ¶ 12 (*Green I*).

¶ 5    On October 24, 2022, defendant filed a motion for entry of an order *nunc pro tunc* correcting the mittimus by awarding him additional sentencing credit. The trial court denied the motion.

¶ 6    On January 18, 2023, defendant filed a "Motion for *Nunc Pro Tunc* and/or Motion to Correct Mittimus." Defendant claimed that he was entitled to sentencing credit for participating in educational programs while detained in the Lake County Jail. As exhibits to the motion, defendant attached, *inter alia*, various certificates (described in more detail below) and a October 16, 2019, letter from the College of Lake County's Student Success Coordinator, indicating that, since March

---

[1]Defendant spelled his name as "Tarrell" in certain *pro se* motions in the trial court.

2019, defendant had been taking General Education Diploma (GED) classes that met three days per week for two hours per day.

¶ 7    The trial court denied the motion, reasoning that defendant was bound by the plea agreement, which dictated the amount of sentencing credit he would receive. Thus, defendant could not now seek additional sentencing credit. This appeal followed.

¶ 8                                      II. ANALYSIS

¶ 9    We initially note that the State contends that, because defendant did not seek relief in the trial court under Illinois Supreme Court Rule 472 (eff. May 17, 2019), he is barred from doing so on appeal. Rule 472 provides, in pertinent part:

"(a) In criminal cases, the circuit court retains jurisdiction to correct the following sentencing errors at any time following judgment and after notice to the parties, including during the pendency of an appeal, on the court's own motion, or on motion of any party:

* * *

(3) Errors in the calculation of presentence custody credit; ***

***

(b) Where a circuit court's judgment pursuant to this rule is entered more than 30 days after the final judgment, the judgment constitutes a final judgment on a justiciable matter and is subject to appeal in accordance with Supreme Court Rule 303.

(c) No appeal may be taken by a party from a judgment of conviction on the ground of any sentencing error specified above unless such alleged error has first been raised in the circuit court. When a post-judgment motion has been filed by a party pursuant to this rule, any claim of error not raised in that motion shall be deemed forfeited." Ill. S. Ct. R. 472(a)(3), (b), (c) (eff. May 17, 2019).

¶ 10    Although not expressly brought under Rule 472, defendant's "Motion for *Nunc Pro Tunc* and/or Motion to Correct Mittimus" was, in substance, a motion for relief under that rule. As defendant observes: "[W]hen analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called." *In re Haley D.*, 2011 IL 110886, ¶ 67. Accordingly, defendant has preserved the issue for review.

¶ 11    Likewise, we reject the State's argument that, under the doctrine of *res judicata*, our decision in *Green I* bars defendant from relitigating the amount of sentencing credit to which he is entitled. The State relies on the following description of the doctrine:

> "Under the well-settled doctrine of *res judicata*, 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.' [Citation.]" (Internal quotation marks omitted.) *People v. Stoecker*, 2020 IL 124807, ¶ 29.

In *Green I*, we dismissed defendant's appeal; we did not render a judgment on the merits. Accordingly, *Green I* does not bar defendant from challenging the trial court's denial of his request for additional sentencing credit.

¶ 12    Turning to the merits, defendant argues that, even though he entered into a fully negotiated plea agreement that specified the amount of sentencing credit he would receive for time spent in custody before sentencing, he is entitled to have the mittimus amended to reflect additional mandatory presentence credit that he purportedly earned pursuant to section 3-6-3(a)(4)(A) of the Unified Code of Corrections (Code) (730 ILCS 5/3-6-3(a)(4)(A) (West 2020)) by participating in certain programs while in the county jail. The State argues that, to the contrary, by entering into the plea agreement, defendant waived the right to the additional credit he now claims. The State

further argues that, even if the plea agreement did not foreclose defendant from seeking additional sentencing credit, defendant has failed to show that he is entitled to the credit that he claims.

¶ 13     In support of his argument that the plea agreement does not foreclose his claim for additional sentencing credit, defendant relies primarily on *People v. Malone*, 2023 IL App (3d) 210612. The *Malone* court observed:

> "Plea agreements, especially negotiated plea agreements where the parties have agreed on the appropriate sentence, are considered contracts between the State and the defendant and are generally governed by contract law. [Citation.] A defendant is entitled to have his mittimus amended to reflect additional presentence credit following a negotiated plea only when (1) he receives less credit than what he was promised [citations], or (2) *he has not been awarded mandatory presentence credit* [citations]." (Emphasis added.) *Id.* ¶ 13.

Notably, despite the emphasized language, the *Malone* court recognized that the sentencing credit in question was, though mandatory, subject to waiver. *Id.* ¶¶ 19-21. Indeed, the *Malone* court explained that, "[w]here the record shows that the parties discussed specific sentence credits during plea negotiations and intentionally chose not to include them in the plea agreement, the defendant received what he bargained for and is not entitled to have his mittimus amended to reflect those credits." *Id.* ¶ 19. However, citing our decision in *People v. Ford*, 2020 IL App (2d) 200252, the *Malone* court added that, "where the record does not conclusively show that the parties agreed to exclude credit as part of the plea agreement, the circuit court should not deny a defendant's motion to amend the mittimus to reflect the credit." *Malone*, 2023 IL App (3d) 210612, ¶ 19.

¶ 14     The *Malone* court arguably read *Ford* too broadly. In *Ford*, the defendant was arrested and taken into custody on March 5, 2017, for aggravated battery of a child. *Ford*, 2020 IL App (2d)

200252, ¶ 3. On December 28, 2017, while still in custody, he was charged in a separate case with endangering the life of a child. *Id.* On March 9, 2018, the defendant entered an open plea of guilty to child endangerment, the State dismissed the aggravated battery case, and the court continued the child endangerment case for sentencing. *Id.* ¶¶ 4-5. At the sentencing hearing, the prosecutor informed the court that the parties had agreed that defendant would receive a seven-year prison sentence with 172 days credit for time served. *Id.* ¶ 6. The defendant directly addressed the court; he expressed confusion over the amount of sentencing credit and asked whether he would receive credit for time in custody since his March 5, 2017, arrest in the aggravated battery case. *Id.* ¶ 7. The court responded that the defendant could receive credit for only the time spent in custody in the case for which he was being sentenced (*i.e.*, the child endangerment case). *Id.*

¶ 15    The defendant in *Ford* subsequently filed an unsuccessful motion to correct the mittimus by awarding additional sentencing credit for time spent in custody since his arrest in the aggravated battery case. *Id.* ¶ 9. On appeal, we held that he was entitled to the additional credit pursuant to section 5-4.5-100(c) of the Code (730 ILCS 5/5-4.5-100(c) (West 2016)), which provided, in pertinent part, that a person "arrested on one charge and prosecuted on another charge for conduct that occurred prior to his or her arrest shall be given credit *** for time spent in custody under the former charge not credited against another sentence." We rejected the State's argument that the defendant could not claim additional sentencing credit because he entered into a fully negotiated plea. *Id.* ¶ 18. We noted that the prosecutor and defense counsel were silent on whether the agreement excluded credit for the defendant's time in custody for aggravated battery before he was charged with child endangerment. *Id.* ¶ 22. As for the defendant himself, we found that, because the trial court erroneously told him that he was not legally entitled to the additional credit, he could not have agreed to waive it. *Id.* ¶ 23.

¶ 16    In our view, *Ford* hinged on waiver principles. The issue, in essence, was whether there was a contractual waiver of the defendant's legal right to sentencing credit for time spent in custody for aggravated battery before he was charged with child endangerment. "Waiver is an intentional relinquishment or abandonment of a known right or privilege." *People v. Brown*, 2020 IL 125203, ¶ 25. In *Ford*, because the defendant was misinformed that he had no right to additional sentencing credit, he could not have knowingly waived that right. That same bar to waiver does not appear in this case, however. Defendant does not suggest that, before entering into the plea agreement, he was misinformed about his right to sentencing credit under section 3-6-3(a)(4)(A) for participation in certain programs or activities. Accordingly, there is arguably no impediment to finding that defendant waived that credit, which was not part of his agreement with the State.

¶ 17    We note that a similar question is currently before our supreme court in a pending appeal from the Fourth District's decision in *People v. Wells*, 2023 IL App (4th) 220552-U, pet. for leave to appeal allowed, No. 129402 (Ill. May 24, 2023). In *Wells*, the parties entered into a fully negotiated written plea agreement. *Id.* ¶ 5. The agreement provided that the defendant would plead guilty to unlawful possession of cannabis with intent to deliver and would receive a sentence of 6 years' imprisonment with credit for 54 days in presentence custody. *Id.* The defendant later sought additional credit for 166 days spent on electronic monitoring. *Id.* ¶ 7. The trial court denied the request. *Id.* The Fourth District affirmed, reasoning that, "because [the] defendant bargained for a disposition providing for a specified amount of presentence credit and other significant benefits, he waived the right to any additional credit." *Id.* ¶ 26.

¶ 18    Our supreme court's decision in the pending appeal in *Wells* might clarify the circumstances under which a defendant who enters into a plea agreement specifying an amount of sentencing credit for presentencing custody may later seek additional credit. For the moment,

however, we need not resolve that question. As noted, the State argues, *inter alia*, that regardless of whether defendant's plea agreement forecloses his claim for additional credit, he has simply failed to establish that he would be entitled to the credit he claims. In his motion, defendant insisted that he was entitled to sentencing credit for participating in educational programs. Section 3-6-3(a)(4)(A) of the Code (730 ILCS 5/3-6-3(a)(4)(A) (West 2020)) provides that the Department of Corrections (DOC) shall adopt rules and regulations providing, in pertinent part, that

> "any prisoner who is engaged full-time in *** educational programs *** and satisfactorily completes the assigned program as determined by the standards of the [DOC], shall receive one day of sentence credit for each day in which that prisoner is engaged in the activities described in this paragraph. *The rules and regulations shall also provide that sentence credit may be provided to an inmate who was held in pre-trial detention prior to his or her current commitment to the [DOC] and successfully completed a full-time, 60-day or longer *** educational program *** provided by the county department of corrections or county jail.*" (Emphasis added.)

During defendant's presentencing custody, the applicable rules and regulations changed regarding the minimum number of scheduled weekly hours necessary for a program (other than a college course) to qualify as a "full-time" educational program. From February 1, 2013, to February 28, 2019, the program must have been scheduled to meet at least 15 hours per week. 20 Ill. Adm. Code 107.520(d)(3) (eff. Feb. 1, 2013). Beginning on March 1, 2019, the required weekly hours were reduced to 10. 20 Ill. Adm. Code 107.520(e)(3) (eff. Mar. 1, 2019); 20 Ill. Adm. Code 107.520(i)(3) (eff. Apr. 1, 2021); 20 Ill. Adm. Code 107.520(j)(2) (B) (eff. Nov. 29, 2022).

¶ 19    The exhibits attached to defendant's motion for additional sentencing credit do not establish that he participated in educational programs that satisfied the criteria for sentencing

credit, *i.e.*, that he met the required number of weekly hours (at least 10) and met for 60 days or more. The certificates indicated that (1) the College of Lake County Adult Education Program awarded defendant a certificate for completion of the "ESL Assistant Program"; (2) while enrolled in a GED preparatory course offered by the College of Lake County, defendant earned a passing grade on a test covering the United States and Illinois Constitutions, as well as the United States Flag; and (3) defendant had been "recognized for successfully completeing [*sic*] Revive Lake County." These certificates do not indicate the number of hours per week that defendant participated in the programs or the total number of days the programs met. Defendant also attached a letter from the College of Lake County's Student Success Coordinator, indicating that defendant had been taking GED classes that met thrice weekly for two-hour sessions. That schedule of classes falls short of the hours necessary to achieve sentencing credit.

¶ 20    Citing *Malone*, defendant argues that the case must be remanded to the trial court to determine whether the programs he participated in satisfied the minimum time commitment to qualify for sentencing credit. The *Malone* court relied on our decision in *People v. Montalvo*, 2016 IL App (2d) 140905, for the proposition that section 3-6-3 of the Code and the corresponding rules and regulations of the Department "place the obligation on the trial court to determine whether a defendant is eligible for sentence credit for participating in and successfully completing a full-time, 60 day or longer *** educational program *** and, if so, how much sentence credit the defendant is entitled to receive." *Malone*, 2023 IL App (3d) 210612, ¶ 16 (citing *Montalvo*, 2016 IL App (2d) 140905, ¶ 20). Based on that reading of *Montalvo*, the *Malone* court held that "if it is not clear from the record the number of days the defendant spent in programming, the case should be remanded to the circuit court to consider further evidence on the issue." *Id.* ¶ 18. Defendant likewise relies on *Montalvo* as authority that the case should be remanded. We disagree.

¶ 21    Both defendant and the *Malone* court have misconstrued our holding in *Montalvo*. At issue in that case was whether the trial court or the DOC was responsible for determining how much sentencing credit the defendant was entitled to for participation in an anger management program. *Montalvo*, 2016 IL App (2d) 140905, ¶ 20. We held that that responsibility fell upon the trial court. *Id.* However, in *Montalvo*, unlike in this case, all the facts relevant to determining sentencing credit were known to the court. *Montalvo* does not require a trial court to conduct an independent inquiry into the amount of sentencing credit to which a defendant is entitled under section 3-6-3(a)(4) of the Code. Nor does *Montalvo* support the proposition that when the trial court denies a defendant's inadequately documented Rule 472 motion, the defendant is entitled to a remand for further proceedings on the motion.

¶ 22    *People v. Gallas*, 136 Ill. App. 3d 482 (1985), cited in *Montalvo*, is similarly inapposite. In *Gallas*, the defendant sought sentencing credit for the entire time he was enrolled in a drug rehabilitation program. *Id.* at 484. The State argued that the defendant was entitled to credit only for the time he actively participated in the program and that the case should be remanded to determine the duration of the defendant's participation. *Id.* On appeal, the court agreed with the State. *Id.* at 484-85. Notably, once the court rejected the defendant's position that he was entitled to credit for his enrollment period, the defendant had no reason to oppose a remand that would allow him to receive at least some sentencing credit. *Id.* at 485. Under these circumstances, the *Gallas* court was not squarely faced with the question of whether the defendant was entitled to a remand for further proceedings. Because, unlike in *Gallas*, the State has not agreed to a remand in this case, *Gallas* has no bearing on the disposition of this case.

¶ 23                                III. CONCLUSION

¶ 24    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 25    Affirmed.