NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230846-U

NO. 4-23-0846

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 19, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| CHARLES K. SIMPSON, | ) | No. 19CF2723 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding the trial court did not err when it denied defendant's motion for additional sentencing credit and the State's participation in the proceedings was not improper.

¶ 2    Defendant, Charles K. Simpson, appeals from the Winnebago County circuit court's judgment denying his motion for a corrected mittimus. Specifically, defendant argues he is entitled to remand for a new hearing because the trial court erred when it relied on the wrong statutory subsection and allowed the State to participate in its decision to deny defendant additional sentencing credit under Illinois Supreme Court Rule 472 (eff. May 17, 2019). The State responds the court properly denied defendant's motion. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        In October 2019, the State charged defendant with possession with intent to deliver a controlled substance, a Class X felony (720 ILCS 570/401(a)(2)(A) (West 2018)) and delivery of a controlled substance, a Class X Felony (*id.*). Following his arrest, defendant was held in pretrial detention at the Winnebago County jail.

¶ 5                A. Defendant's Sentence and Request to Amend the Mittimus

¶ 6        On August 10, 2021, defendant pleaded guilty to an amended charge of attempted possession with intent to deliver a controlled substance, a Class 1 felony (720 ILCS 5/8-4 (West 2018); 720 ILCS 570/40l(a)(2)(A) (West 2018)). In exchange for his guilty plea, the State agreed to dismiss the remaining charge and to sentence defendant to 18 years in the Illinois Department of Corrections (DOC), with 671 days' credit for his time in custody. At the plea hearing, defense counsel stated, "[I]t is anticipated we'll be requesting to file an amended [mittimus] due to the fact that we did not know we'd have a plea today and [defendant] does have classes that we'll need to attach his credits for." The trial court accepted defendant's plea and sentenced him in accordance with the agreement.

¶ 7        The following week, on defendant's motion, the trial court conducted a hearing to determine whether defendant was entitled to additional sentencing credit. Defense counsel informed the court as follows:

> "I'll be honest. I don't know that this qualifies [defendant] for any extra time
> since I did get Ginny Gains' listing of the classes that he took in the jail, which
> only amounts to 13 days and 26 hours.
>
>    There's also his transcript for the classes that he's taken online. The only
> problem with the online classes is it doesn't give—all it puts out is that he
> completed the classes and that he did the time and what his scores were. It doesn't

give a listing of dates, times or hours for that. That's the best right now we're able to get.

So what I was hoping at least to do—and I understand with the [mittimus]—is to at least attach his service to the [mittimus] so that [DOC]—I understand the Court makes findings, but [DOC] also takes a look at those to see if there's any credit that they feel. They do their own internal discretionary regarding whether or not it qualifies for anything.

So that's why I just want to make sure that at least when he goes down to [DOC], [DOC] is made aware of what hours he's done. Because it's also my understanding that even if the Court makes specific findings regarding credits for times, [DOC] still discretionarily can determine whether to give them credit or not."

In response, the State indicated it took no position on whether defendant qualified for additional sentencing credit, acknowledging it was "for the Court to review and make a determination as to whether or not the Court is going to accept those classes as credit."

¶ 8        Before deciding the motion, the trial court acknowledged the parties "didn't talk about this at all" when defendant pleaded guilty. However, the court determined defendant did not demonstrate he was entitled to additional sentencing credit, stating, "In looking at the documents that I've received today, it doesn't appear that you would qualify for me to make that finding." Referencing the document defendant submitted in support of his request, the court noted, "[I]t doesn't show the completion of a class, for example, relating to substance abuse, as an example," and that it is "hard for me to tell what all those other programings [*sic*] are." However, the court also pointed out DOC may have additional information regarding the issue of

sentencing credit, stating, "But when you see—one class is called BPPPDSV2. And he completed it. I don't know. But I'm happy to let them know if they know what it means and they want to use it for your credit." The court then inquired of defendant, "So is the fact that I am not going to agree to give you the credit but will allow you to take that paperwork with you to [DOC]—does that mean that you are interested in pursuing a motion to withdraw your guilty plea?" Defendant responded he did not wish to withdraw his plea, and the following colloquy ensued:

"THE COURT: All right. Just if [DOC] will consider—

THE DEFENDANT: Yeah. That's what I was—

THE COURT: All right. Fair Enough.

THE DEFENDANT: Yeah."

Defense counsel then filed the document containing defendant's course listing. Defendant did not file any postsentencing motions or a notice of appeal.

¶ 9                                    B. Defendant's *Pro Se* Motion

¶ 10          In June 2022, defendant *pro se* filed a motion titled "Motion to Correct Mittimus and Credit Days Served." In his motion, defendant asserted he completed life skills courses during the period of September 28, 2020, to June 3, 2021, and served as a pod tender between August 2020 and September 2021. Therefore, defendant argued, he was entitled to additional sentencing credit under section 3-6-3(a)(4) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-6-3(a)(4) (West 2020)). In support of his motion, defendant attached a document with the heading "Transcript of User: CHARLES SIMPSON." The transcript was the same document defense counsel previously submitted to the court and consisted of columns with the following categories: "Course," "Date Enrolled," "Date Completed***," "Status," and "Grade."

The transcript indicated defendant completed 26 individual classes over 13 dates. On July 29, 2022, the State filed a response opposing the motion, arguing section 3-6-3(a)(4)(A) does not provide credit for work performed while in pretrial detention.

¶ 11    On August 11, 2022, the trial court conducted a hearing on defendant's motion. Defendant was absent from the proceedings. Regarding the life skills courses and referencing section 3-6-3(a)(4)(A) of the Unified Code, the assistant state's attorney stated, "[I]t says it has to be 60 days or longer. I'm not sure." The court suggested the State might want more time to look into whether defendant was entitled to sentencing credit, and the assistant state's attorney agreed, stating, "I don't know what 'full time (60 day or longer)' means," and indicating she would not object if defendant's courses "qualifie[d] for that." The court continued the matter to provide the State an opportunity to contact the jail and investigate further.

¶ 12    The trial court conducted another hearing in September 2022, wherein defendant was again absent. The State reiterated its position defendant was not entitled to any sentencing credit for serving as a pod tender while in pretrial detention because such credits were only available to those who worked in that position while in DOC. However, the State again expressed it did not know whether defendant was entitled to credit for his life skills courses, noting it did not have "any information about that." The State had attempted to contact someone at the jail about the life skills courses but was unsuccessful. The court believed the jail "prepares some kind of letter about how many hours are involved" for its programs and directed the State to continue its effort to contact the jail.

¶ 13    The trial court conducted another hearing in November 2022, again in defendant's absence. The State indicated it had e-mailed the correct jail personnel regarding defendant's life

skills courses but had not received a response. At this point, the State felt it was at "a standstill." The court responded it would look into the issue and continued the proceedings.

¶ 14    The trial court conducted another hearing in February 2023, again in defendant's absence. The State informed the court it had requested defendant's trial counsel to assist in these proceedings and had not received a response. Furthermore, it had attempted to contact the jail twice and had not received a response. The assistant state's attorney explained, "I have a one-page list of programs that's computerized, but I don't know anything about any of those programs or how they might apply, so I don't know what to do. I know this has been in court many times." In response, the court stated it did not have sufficient information to determine whether defendant was entitled to sentencing credit and continued the matter again to a date where defendant could attend the proceedings by video.

¶ 15    In April 2023, the trial court conducted a hearing where defendant was present. The court advised defendant his work as a pod tender "in the Winnebago County Jail doesn't count towards credit." The court inquired of defendant if he had any documentation to support his request for additional sentencing credit for the life skills courses he took. Defendant responded he had attached documentation to his *pro se* motion, which was all the information the jail had provided him. The court replied as follows:

> "I mean, this is insufficient information for me to be able to make a decision. It's really hard to get this type of credit, just because the requirement is for a lot of hours. But there's nothing in what you've provided me which indicates that.
>
> So if you like, I can just take the case off the call. And if you want to—if you get some additional information, you can bring it back to my attention."

Defendant acquiesced to removing the case from the call.

¶ 16    In July 2023, defendant *pro se* filed another motion to correct the mittimus. This time, defendant argued he was entitled to sentencing credit under a different section of the Unified Code—section 3-6-3(a)(4.2) (*id.* § 3-6-3(a)(4.2)). Specifically, defendant asserted he was entitled to receive 147 days' credit for (1) his completion of 26 life skills classes between December 2020 and May 2021 and (2) working as a pod tender from August 2020 to September 2021. Defendant again attached the "Transcript of User" document in support of his motion.

¶ 17    In August 2023, the trial court held a hearing on defendant's *pro se* motion in his absence. The State reiterated its position defendant was not entitled to sentencing credit for working as a pod tender while in pretrial detention. Regarding the life skills courses, the assistant state's attorney commented, "I can't tell from any of those transcripts how many hours it is or whether it would qualify, so I wouldn't think that we would check that box [in the sentencing order] either." Ultimately, the court denied defendant's *pro se* motion and entered a written order, stating as follows:

> "Without further information as to the educational classes and whether they would qualify as full[-]time 60 day or longer program, or whether they would qualify under any of the other statutorily permitted factors, the defendant's motion to correct mittimus filed 7/11/23 is heard and denied. The motion to correct mittimus is also denied as to the request for credit as a pod tender as this is not permitted for time spent as a tender in a county jail but only at [DOC]."

¶ 18    Defendant *pro se* filed a timely notice of appeal, and the Office of the State Appellate Defender was appointed to represent him. In the notice, defendant asserted he was entitled to sentencing credit for participating in programming and working while in the Winnebago County jail.

¶ 19                                    II. ANALYSIS

¶ 20          On appeal, defendant argues the trial court erred when it denied his motion

seeking additional sentencing credit. Specifically, defendant presents two arguments. First, the

court erred when it refused to make a decision and applied the incorrect law. Second, the court

erroneously permitted the State to participate in the proceedings to determine whether he was

entitled to sentencing credit. The State responds defendant's motion was properly denied because

(1) the court did not refuse to decide on the issue of sentencing credit or apply the incorrect law

and (2) the State's participation in the proceedings was not improper. Furthermore, the State

argues defendant failed to provide adequate documentation showing he was entitled to the

sentencing credit he sought. We affirm.

¶ 21                                    A. Waiver

¶ 22          As an initial matter, the State asserts defendant waived any claim he was entitled

to additional sentencing credit when he entered a fully negotiated plea of guilty in exchange for a

sentence to 18 years in prison with credit for 671 days' credit for time served and the dismissal

of other charges. Instead, citing *People v. Wells*, 2024 IL 129402, the State contends defendant's

only remedy was to withdraw his plea, which he affirmatively informed the trial court he did not

want to do. Defendant responds this case is distinguishable from *Wells* and his claim is not

barred.

¶ 23          In *Wells*, the defendant pleaded guilty to unlawful possession of cannabis with

intent to deliver in exchange for 6 years in prison, with 54 days' credit for time served. *Id.* ¶ 1.

After the trial court sentenced the defendant pursuant to the agreement, he filed a motion seeking

additional sentencing credit for time spent on home detention prior to the plea, which the court

denied. *Id.* On appeal, this court affirmed, concluding " 'a fully negotiated guilty plea constitutes

a waiver of presentence custody credit not provided for in the plea agreement.' " *Id.* Relying on contract principles, the Illinois Supreme Court affirmed on appeal, holding, "[W]here a fully negotiated plea deal represents a complete and final expression of the parties' agreement, a presumption arises that every material right and obligation is included and neither party may unilaterally seek modification of the agreement." *Id.* ¶ 24. Applying the holding to the case, the supreme court concluded the parties intended for the defendant to receive 54 days' credit for time served as part of the final expression of the plea agreement. *Id.* In sum, "the parties expected the trial court to immediately enter a final judgment consistent with the terms of the agreement." *Id.* Accordingly, the defendant was foreclosed from seeking additional credit for home detention, regardless of whether he was eligible for such credit under the terms of the applicable statute. *Id.*

¶ 24    The facts presented in this case are distinguishable from *Wells* and do not compel a finding of waiver.

¶ 25    First, in *Wells*, neither the State nor the defendant raised the issue of sentencing credit for home detention during the plea and sentencing proceedings. Instead, the issue was not raised until the defendant had already been sentenced and was in the custody of DOC. As the supreme court concluded, "the parties expected the trial court to immediately enter a final judgment consistent with the terms of the agreement," which provided for 54 days' credit for time served. See *id.* In contrast, defense counsel in this case informed the trial court during the plea hearing that the mittimus may need to be corrected based on defendant's participation in programming in the county jail. The parties had not initially anticipated defendant would be pleading guilty on that date, and the court therefore continued the proceedings after accepting defendant's plea to allow him to file a motion to correct the mittimus. At the next hearing, the

court noted its uncertainty on the issue of the sentencing credits when it stated, "[Defendant], we didn't talk about this at all when you took your plea."

¶ 26    Next, we acknowledge the trial court asked defendant at the next hearing whether he wanted to withdraw his plea based on "the fact that [it was not] going to agree to give [defendant] the credit," and defendant stated he did not wish to withdraw his plea. However, this exchange did not convey to defendant he would be completely foreclosed from seeking additional credit if he declined to withdraw his plea. In fact, the court's statements insinuated defendant could still be entitled to the credit he sought upon review by DOC. The court essentially treated the issue of defendant's sentencing credit as a matter ancillary to the plea agreement, and even after stating it would not "agree" to award it, led defendant to believe the matter was not final because DOC had the discretion to come to a different conclusion. Unlike *Wells*, the record here rebuts any presumption the plea agreement constituted the final expression of the agreement of the parties on the matter of whether defendant was entitled to sentencing credit for participation in programming in the county jail. Accordingly, we conclude defendant did not waive his claim he was entitled to additional sentencing credit not provided for in the plea agreement.

¶ 27    B. Court's Responsibility to Determine Sentencing Credit

¶ 28    We next address defendant's argument the trial court failed to exercise its responsibility to determine whether he was entitled to sentencing credit.

¶ 29    The trial court is responsible for awarding sentencing credit to a criminal defendant for programming completed while in pretrial detention. 730 ILCS 5/5-4.5-100(c-5) (West 2020); see *id.* § 3-6-3(a)(4)(A) ("Calculation of *** county program credit [under this section] shall be done at sentencing as provided in Section 5-4.5-100 of this Code and shall be

- 10 -

included in the sentencing order."). This responsibility rests squarely with the trial court and cannot be delegated to DOC. See, *e.g.*, *People v. Montalvo*, 2016 IL App (2d) 140905, ¶ 20; see also *People v. Malone*, 2023 IL App (3d) 210612, ¶ 16, *overruled on other grounds by Wells*, 2024 IL 129402, ¶ 28. Where a trial court abdicates its responsibility to award sentencing credit under sections 5-4.5-100 and 3-6-3 of the Unified Code, the appellate court may modify the judgment pursuant to Illinois Supreme Court Rule 366(a) (eff. Feb. 1, 1994). *Montalvo*, 2016 IL App (2d) 140905, ¶ 20.

¶ 30         Here, the trial court did not abdicate its responsibility to award defendant sentencing credit. Unlike the trial court in *Montalvo*, the court in this case did not refuse to decide whether defendant was entitled to sentencing credit for participation in county jail programming. At the hearing on defendant's initial motion to amend the mittimus in August 2021, the court stated it would not agree to award defendant the credit he sought. While the court did state it would allow defendant to provide his documents to DOC, its decision was clear: it did not believe, based on the documentation before it, defendant was entitled to additional sentencing credit. Following defendant's *pro se* motion filed in August 2022, the court conducted several hearings to investigate the matter further and attempted to garner information from the Winnebago County jail. At the April 2023 hearing, the court advised defendant his work as a pod tender "in the Winnebago County Jail doesn't count towards credit." At the conclusion of this hearing, the court took the matter off the call and told defendant he could bring the matter back before the court if he obtained more information on the courses. Finally, in the written order filed in August 2023 in response to defendant's July 2023 motion, the court held that in the absence of any information to show defendant's life skills courses qualified as "full[-]time" under the statute, defendant's motion was heard and denied. The court also determined

defendant was not entitled to credit for working as a pod tender in the county jail under the terms of the statute. The court exercised its duty to make determinations on the issue of sentencing credit both at the initial hearing on defendant's motion to correct the mittimus and after defendant filed his *pro se* motions. The court's statement it lacked enough information to make the finding defendant requested constitutes a determination the statutory requirements were not satisfied.

¶ 31                      C. Entitlement to Sentencing Credit

¶ 32          We next consider whether the trial court erred when it found defendant was not entitled to additional sentencing credit as asserted in his amended *pro se* motion filed July 11, 2023. Specifically, defendant argues the court incorrectly found him ineligible for credit under section 3-6-3(a)(4)(A) because the statute does not require a life skills program to be "full-time." Defendant further asserts the court failed to consider whether he was entitled to credit under section 3-6-3(a)(4.2) of the Unified Code due to the format of the mittimus.

¶ 33          Winnebago County uses a preprinted sentencing judgment form (mittimus). The form contains a list of findings the trial court can make applicable to the judgment, along with empty boxes the court may check to indicate it has made the finding. One of these findings states as follows:

> "The defendant successfully completed a full-time (60-day or longer) Pre-Trial Program □ Educational/Vocational □ Substance Abuse □ Behavior Modification □ Life Skills □ Re-Entry Planning – provided by the county jail while held in pre-trial detention prior to this commitment and is eligible and shall be awarded additional sentence credit in accordance with 730 ILCS 5/3-6-3(a)(4) for ____ total number of days of program participation, if not previously awarded."

The form does not contain a similar finding the court may check in reference to sentencing credit under section 3-6-3(a)(4.2) of the Unified Code.

¶ 34          The issue of whether a criminal defendant is entitled to sentencing credit is a question of statutory interpretation that we review *de novo*. *People v. Washington*, 2019 IL App (1st) 172372, ¶ 8. Under the Unified Code, criminal defendants may be entitled to credit against their sentences as an incentive for working or participating in certain programs while in custody. See 730 ILCS 5/3-6-3(a)(1.5)(A), (C) (West 2020). Specifically, under section 3-6-3(a)(4)(A), sentencing credit may be awarded to a criminal defendant "who was held in pre-trial detention prior to his or her current commitment to [DOC] and successfully completed a full-time, 60-day or longer substance abuse program, educational program, behavior modification program, life skills course, or re-entry planning provided by the county department of corrections or county jail." *Id.* § 3-6-3(a)(4)(A). Sentencing credit under that section shall be awarded at the time of sentencing in accordance with section 5-4.5-100 of the Unified Code and included in the sentencing order. *Id.*; see *id.* § 5-4.5-100. Furthermore, any criminal defendant who "engaged in self-improvement programs, volunteer work, or work assignments that are not otherwise eligible activities under paragraph (4), shall receive up to 0.5 days of sentence credit for each day in which the prisoner is engaged in activities described in this paragraph." *Id.* § 3-6-3(a)(4.2).

¶ 35                          1. *Eligibility Under Section 3-6-3(a)(4.2)*

¶ 36          Here, the record does not show the trial court specifically considered whether defendant was entitled to any sentencing credit under section 3-6-3(a)(4.2). Although the court's written order states it lacked information to determine whether defendant's education classes "would qualify as full[-]time 60 day or longer program, *or whether they would qualify under any of the other statutorily permitted factors*" (emphasis added), the transcript of the hearing shows

- 13 -

neither the court nor the State ever discussed section 3-6-3(a)(4.2), which was the basis of defendant's motion. During the final hearing, which defendant did not attend, the State expressed its position defendant was not entitled to sentencing credit for his life skills courses or work as a pod tender because "there's nothing to—it doesn't apply to any of the categories that would be checked on the mittimus," and "I can't tell from any of those transcripts how many hours it is or whether it would qualify, so I wouldn't think that we would check that box either." Essentially, the focus of the State's and the court's inquiry was whether defendant had satisfied any of the requirements to check boxes on the preprinted form. There is no indication any factors not included in the mittimus form—such as section 3-6-3(a)(4.2)—were considered.

¶ 37       However, the trial court did not err by "failing" to consider whether defendant was eligible for credit under section 3-6-3(a)(4.2) of the Unified Code because that section does not apply to programming or work assignments completed by a defendant in pretrial detention at a county jail. The Third District recently addressed this issue in *People v. Williamson*, 2024 IL App (3d) 220501. There, the defendant argued the trial court erred when it failed to award him sentencing credit for working as a pod tender while in pretrial detention under section 3-6-3(a)(4.2) of the Unified Code. *Id.* ¶ 21. The *Williamson* court interpreted section 3-6-3(a)(4.2) as follows:

> "The language in this provision does not entitle individuals held in pretrial custody to sentence credit for work assignments. Had the legislature intended for this section to apply to inmates in pretrial custody, it would have expressly stated that intention as it did in the other sections. See *People v. Clark*, 2019 IL 122891, ¶ 23; *People v. Hudson*, 228 Ill. 2d 181, 193 (2008) ('When the legislature uses certain language in one part of a statute and different language in another, we may

- 14 -

assume different meanings were intended.'). Simply put, upon reviewing the statute in its entirety, it is apparent that the legislature did not intend for the provisions of section 3-6-3(a)(4.2) to apply to those held in pretrial custody where it did not specifically include them as it did in other sections." *Id.* ¶ 26.

We agree with the Third District's reasoning and conclude defendant was not eligible for sentencing credit under section 3-6-3(a)(4.2) for the life skills courses and work as a pod tender while in pretrial detention. Accordingly, the court did not err when it failed to consider whether defendant was eligible for credit under this section.

¶ 38                                    2. *Eligibility under Section 3-6-3(a)(4)(A)*

¶ 39            We next consider whether the trial court erred when it found defendant was not eligible for sentencing credit under section 3-6-3(a)(4)(A) of the Unified Code.

¶ 40            With respect to defendant's claim he was entitled to sentencing credit for work as a pod tender, we conclude the portion of section 3-6-3(a)(4)(A) that applies to pretrial detention only provides credit to inmates who complete "a full-time, 60-day or longer substance abuse program, educational program, behavior modification program, life skills course, or re-entry planning provided by the county department of corrections or county jail." 730 ILCS 5/3-6-3(a)(4)(A) (West 2020). The statute does not provide any additional sentencing credit for completing correctional industry assignments—such as work as a pod tender—in the county jail. *Id.* Accordingly, the court did not err when it determined defendant's work as a pod tender did not qualify him for sentencing credit under section 3-6-3(a)(4)(A). See, *e.g.*, *People v. Kelly*, 2023 IL App (4th) 220907-U, ¶¶ 13-15; *People v. Blazer*, 2024 IL App (4th) 230446-U, ¶ 22.

¶ 41            With respect to the life skills courses, defendant asserts the phrase "full-time, 60-day or longer" in section 3-6-3(a)(4)(A) does not apply to the completion of life skills

- 15 -

courses. Instead, defendant claims that phrase modifies only "substance abuse program." Accordingly, defendant's argument continues, he was entitled to credit under this section for completing 26 hours of life skills courses over 13 separate dates spanning from December 2020 to May 2021. Relying on this court's nonprecedential order in *Kelly*, the State responds the phrase "full-time, 60-day or longer" (*id.*) applies to all programs listed in that sentence, including life skills courses, and defendant has failed to demonstrate the courses he completed met those requirements.

¶ 42    In *Kelly*, the defendant sought additional sentencing credit under section 3-6-3(a)(4)(A) for completing certain programs while in pretrial custody in the Woodford County jail. *Kelly*, 220907-U, ¶ 5. Specifically, the defendant asserted he completed "1095 lessons, received 212 certificates, and participated in 698.15 hours of qualifying programs." *Id.* In support of his request, the defendant attached a transcript detailing each program, which included "the program's name, the subjects covered by the program, the date defendant completed the program, and the hours he spent in completing the program." *Id.* The trial court denied the motion, and on appeal, the defendant argued the court erred when it determined he did not qualify for sentencing credit under section 3-6-3(a)(4)(A) because he did not engage in a "60-day or longer" program as required by the statute. *Id.* ¶ 11. This court affirmed and, relying on principles of statutory construction, held as follows:

> "With credit for pretrial detention, the provision states 'full-time, 60-day or longer' in describing the program for which credit is sought, not just 'full-time' like for inmates in DOC. In construing a statute, '[e]ach word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous.' [Citation.] Here, defendant's reading of the

- 16 -

provision by focusing on the 'full-time' language and ignoring the '60-day or longer' language renders the '60-day or longer' language superfluous. Accordingly, we disagree with defendant's interpretation of the provision. For a defendant seeking additional sentencing credit under section 3-6-3(a)(4) earned while in pretrial detention, the qualifying program must be both full-time *and* 60 days or longer. As such, defendant's citation to the definition of 'full-time' in the Illinois Administrative Code is irrelevant to the additional requirement the program must be 60 days or longer." (Emphasis in original.) *Id.* ¶ 13.

Because the defendant's documentation did not state "how many days each program lasted or give a program's start date," this court concluded the court did not err when it determined the defendant was not entitled to additional sentencing credit under section 3-6-3(a)(4)(A). *Id.* ¶ 14. This court further distinguished the case from *Montalvo*, wherein the Third District focused its inquiry solely on the "full-time" requirement set forth in the statute. *Id.* This court reasoned that in *Montalvo*, the defendant had already demonstrated his participation in the program spanned 78 days, and therefore whether the "60-day" requirement applied was not at issue. *Id.* (citing *Montalvo*, 2016 IL App (2d) 140905, ¶ 26). We agree with this court's previous ruling in *Kelly* and conclude a defendant seeking sentencing credit under section 3-6-3(a)(4)(A) must demonstrate his participation in an eligible program was both full-time and 60 days or longer.

¶ 43        Here, the record does not show defendant completed a "full-time, 60-day or longer" life skills course. 730 ILCS 5/3-6-3(a)(4)(A) (West 2020). Although the Unified Code does not define what constitutes a "full-time" program, Illinois courts have relied on the Illinois Administrative Code's definition. See *Malone*, 2023 IL App (3d) 210612, ¶ 16; see also *People v. Green*, 2024 IL App (2d) 230094-U, ¶ 18 (concluding the defendant was not entitled to

sentencing credit under section 3-6-3(a)(4)(A) because he failed to show he participated in a full-time educational program). Under the Administrative Code, "life skills *** programming shall be considered full-time if they include a minimum of three-hours of programming." 20 Ill. Adm. Code 107.520(j)(1) (2020). The only documentation defendant has provided in support of his claim was the "Transcript of User," which fails to show how many hours of programming defendant completed. Defendant claims the transcript showed he completed "13 days and 26 hours" of classes, as noted by defense counsel at the initial hearing. While defendant also claims on appeal that no one questioned defense counsel's calculation, it is unclear whether the trial court accepted it or if counsel's statement even accurately reflects the time defendant was engaged in these courses. Moreover, the court expressed at the hearing it was not sure each course qualified as "life skills," except for those which contained the word "Skill" in the title. Several classes had titles such as "RT-PFSBO-V3" and "BPPPVSV2," which told the court nothing regarding the nature of the course. Furthermore, although defendant completed the courses during a period well over 60 days, it is unclear whether the courses were part of a comprehensive program designed to be completed in a 60-day-or-longer period. While defendant certainly completed 26 courses between December 2020 and May 2021, this court has no basis— other than a general sense that it would probably take longer than three hours to complete that number of courses—to conclude the statutory requirements to award sentencing credit were met.

¶ 44        However, we would be remiss if we did not note our concern over the lack of cooperation from the Winnebago County jail in this case. Based on defense counsel's statements at the initial hearing to correct the mittimus, there is at least a possibility defendant did, in fact, complete more than the minimum three hours of life skills courses as part of a 60-day or longer program. If so, the only reason defendant will not be awarded sentencing credit to which he may

be entitled by statute is the jail's failure to respond to the State's and the trial court's efforts to decode the enigmatic "Transcript of User," which was all the jail was seemingly willing or able to provide. The court repeatedly insinuated it did not have enough information, and the State attempted to contact the jail several times, to no avail. The State noted at one point that its efforts had come to a "standstill." While we recognize the immense responsibilities faced by Illinois county jails, the proceedings in this case were needlessly protracted by this lack of cooperation and failure to provide detailed information about the courses offered in the jail and the corresponding credits. This lack of cooperation is contrary to the purpose of the Unified Code's statutory scheme, which is designed to incentivize inmate participation in such programs. In the future, we encourage the trial court to use the tools at its disposal to ensure the jail's timely communication and cooperation in these proceedings.

¶ 45                    D. State's Participation in the Proceedings

¶ 46        Finally, defendant claims this court should remand to the trial court because the State's participation in these proceedings was improper. Defendant asks this court to create new requirements for the trial court's assessment of *pro se* motions to correct the mittimus under Illinois Supreme Court Rule 472 (eff. May 17, 2019) that would limit the State's ability to participate. Noting the lack of a right to counsel in proceedings to correct the mittimus and likening them to first-stage postconviction petitions and *pro se* claims of ineffective assistance of counsel under *People v. Krankel*, 102 Ill. 2d 181 (1984), defendant asserts the State's participation rendered the proceedings fundamentally unfair. We disagree.

¶ 47        We find the comparison of (1) proceedings to correct the mittimus under Rule 472 with (2) proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-7 (West 2022)) and *Krankel* is inapt here. To begin, proceedings to correct the mittimus do not involve

- 19 -

the resolution of whether a defendant was deprived of a constitutional right—the very purpose of both postconviction and *Krankel* proceedings. Accordingly, the implications of the former proceedings lack the gravity of the latter. Furthermore, the State correctly notes as follows in its brief:

> "In contrast to *Krankel* hearings and successive post conviction petitions, Rule 472 does not call for a two-step process in which the court first considers defendant's claims and determines if further proceedings are required. Instead, it calls for a single factual inquiry—was defendant entitled to additional credit against his sentence."

Accordingly, because a Rule 472 motion does not involve (1) the same constitutional dimensions as postconviction or *Krankel* proceedings or (2) a multi-step inquiry to determine the merits of the claim, we decline defendant's invitation to create a new rule limiting the State's participation in Rule 472 proceedings to correct the mittimus.

¶ 48                                     III. CONCLUSION

¶ 49          For the reasons stated, we affirm the trial court's judgment.

¶ 50          Affirmed.