NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240760-U

NOS. 4-24-0760, 4-24-0761 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| TOREY DELONE JACKSON, | ) | Nos. 21CF193 |
| Defendant-Appellant. | ) | 21CF1617 |
| | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Steigmann and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding section 3-6-3(a)(4.2) of the Unified Code of Corrections (730 ILCS 3-6-3(a)(4.2) (West 2022)) did not apply to programs defendant completed prior to sentencing to the Illinois Department of Corrections.

¶ 2    Defendant, Torey Delone Jackson, appeals the trial court's denial of his motion to reconsider his sentences in case Nos. 21-CF-193 and 21-CF-1617. He argues the court erred in sentencing him in each case where it failed to give him sentencing credit for participating in certain "self-improvement" programs while in pretrial custody. Additionally, he argues that although he has completed his sentences, his case is not moot because he is still on mandatory supervised release (MSR). On defendant's motion, we consolidated his appeals.

¶ 3    We affirm.

¶ 4                                 I. BACKGROUND

¶ 5        On January 30, 2021, defendant was charged with the following three counts in case No. 21-CF-193: (1) aggravated battery, a Class 2 felony (720 ILCS 5/12-3.05(d)(4) (West 2020)); (2) obstructing a peace officer, a Class A misdemeanor (*id.* § 31-1(a)); and (3) violating conditions of pretrial release, a Class A misdemeanor (*id.* § 32-10(b)). The charges alleged that defendant went to the home of a former girlfriend, Kathryn Irvin, whom he was ordered not to have contact with as a term of bail in a separate domestic battery case. When police arrived at the residence, defendant allegedly hid from them and later spat in an officer's face. For this case, he was released on bond and again ordered to have no contact with Irvin.

¶ 6        On August 26, 2021, defendant was charged with domestic battery in case No. 21-CF-167 for knowingly causing bodily harm to Irvin. Due to his prior convictions for domestic battery, the charge was a Class 4 felony. *Id.* § 12-3.2(b). He was arrested approximately a month later when he attempted to break into Irvin's residence, an incident for which he was charged in case No. 21-CM-2015.

¶ 7        Pursuant to a plea deal, defendant pled guilty to aggravated battery of a peace officer in case No. 21-CF-193, domestic battery in case no. 21-CF-167, and a misdemeanor criminal damage count in case No. 21-CM-2015. The remaining counts, as well as any other pending cases defendant had, were dismissed. In case Nos. 21-CF-1617 and 21-CF-193, he was sentenced to 18 months of probation and 180 days in county jail, 95 of which were stayed and remittable upon successful completion of probation. The remainder of the jail sentence was satisfied, with credit for 85 days served. As a term of his probation, defendant was ordered to have no contact with Irvin.

¶ 8        On June 17, 2022, the State filed a petition to vacate defendant's probation, alleging that a few days prior, defendant had entered Irvin's home and struck her with a hammer,

rendering her unconscious, before beginning to strangle her. The petition further alleged that defendant had failed to report to adult probation as directed, had tested positive for cocaine and alcohol, and had failed to submit to random drug testing, all in violation of the terms of his probation. He was arrested on June 21, 2022, and on July 28, 2023, he admitted to the allegations concerning alcohol and drug use and the failure to report to adult probation.

¶ 9 On October 2, 2023, the trial court resentenced defendant. He was given five years in the Illinois Department of Corrections (DOC), with one year of MSR, in case No. 21-CF-193 and five years in DOC, with four years of MSR, in case No. 21-CF-1617. The sentences would run concurrently. He was also granted 561 days of credit for time served in case No. 21-CF-193 and 554 days of credit in case No. 21-CF-1617.

¶ 10 At the sentencing hearing, defense counsel submitted documents showing defendant's completion of three programs while held in county jail: (1) Rockford Reachout, a "Spiritual Impact Weekend Program" that ran from December 8, 2022, through December 11, 2022, (2) Breaking Free Online, an approximately 8-hour online program, and (3) 910 completed course hours in Edovo, an online education platform providing self-improvement courses for those who are incarcerated. Defense counsel asked the trial court if defendant would be granted additional sentencing credit for these programs. The court stated it would attach evidence of the programs to the mittimus but did not give defendant any further credit.

¶ 11 On October 11, 2023, defendant filed a motion to reconsider his sentence in both cases. Among other things, he argued the trial court erred in denying him sentencing credit pursuant to section 3-6-3(a)(4.2) of the Unified Code of Corrections (Code) (730 ILCS 5/3-6-3(a)(4.2) (West 2022)) for the programs he completed while in county jail. At a hearing on the motion, the court found that the language in section 3-6-3(a)(4.2) applied only to credits earned

in DOC. The court additionally noted that the types of classes defendant took while in the county jail did not qualify for credit under section 3-6-3(a)(4.2). The court denied defendant's motion, restating its stance that it would attach the program documents to the mittimus for consideration by DOC, but it did not believe it was authorized to grant defendant credit.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 On appeal, defendant argues that the trial court erred in denying him one half-day credit for each day he participated in "self-improvement programs" while in custody of the county prior to being sentenced to DOC. He argues he was entitled to this credit pursuant to section 3-6-3(a)(4.2) of the Code (see *id.*) and the court was obligated to apply it to his sentence. He breaks this argument down into two separate points: (1) the programs he completed while in custody prior to sentencing were of the type contemplated by section 3-6-3(a)(4.2) and (2) the term "prisoner" in section 3-6-3(a)(4.2) applies to people incarcerated in both DOC and county jails. Because we find the second issue dispositive, we address it first.

¶ 15 A. Mootness

¶ 16 However, before discussing defendant's argument, we must first determine if his case is moot. "A case is moot if the issues involved in the trial court have ceased to exist because intervening events have made it impossible for the reviewing court to grant effectual relief to the complaining party." *People v. Roberson*, 212 Ill. 2d 430, 435 (2004). Generally, Illinois courts do not decide moot questions. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009).

¶ 17 Defendant acknowledges that the sentences he seeks to appeal have been fully served, and he is currently on MSR. However, he claims his appeal is not moot because "[s]entence credits applied towards his prison sentence affect how long [he] could be

reincarcerated in the event that he violated his MSR." In support of his argument, he cites a single case, *People v. Montalvo*, 2016 IL App (2d) 140905, ¶ 14, in which the Third District announced the same proposition. The State appears to agree that defendant's appeal is not moot, as it offered no argument to the contrary on appeal.

¶ 18 We agree defendant's case is not moot, although we do not rely on *Montalvo* for this conclusion. In both of defendant's cases, defendant was sentenced to five-year terms in the DOC, followed by a period of MSR. If he had been awarded additional sentencing credit, his prison terms would have ended sooner, causing his MSR periods to begin sooner and therefore end sooner as well. See *People v. Lamb*, 2021 IL App (1st) 191645-U, ¶ 22. Because defendant is currently on MSR, we find we are able to provide him effective relief, and therefore, his appeal is not moot, despite the fact that the sentences on which he seeks sentencing credit have already been served. See *id.*

¶ 19                                    B. Sentencing Credit

¶ 20 Defendant asks us to interpret the language of section 3-6-3(a)(4.2) of the Code (730 ILCS 5/3-6-3(a)(4.2) (West 2022)) to determine if it applies to him. "The primary goal in interpreting a statute is to ascertain and give effect to the intent of the legislature." *People v. Stewart*, 2022 IL 126116, ¶ 13. The best indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* A statute should be viewed as a whole, and its words and phrases should be construed in light of other relevant provisions. *People v. Clark*, 2019 IL 122891, ¶ 20. To that end, "[e]ach word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Id.* Further, "[w]hen the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended." *People v. Hudson*, 228 Ill. 2d 181, 193 (2008).

A statute is ambiguous, and may be interpreted using extrinsic aids of construction, if it is capable of being understood by "reasonably well-informed persons in two or more different ways." *Stewart*, 2022 IL 126116, ¶ 13. Statutory construction is a question of a law that is reviewed *de novo*. *Id.*

¶ 21        The version of section 3-6-3(a)(4.2) of the Code that was effective at the time of defendant's sentencing states as follows:

> "The rules and regulations shall also provide that any prisoner engaged in self-improvement programs, volunteer work, or work assignments that are not otherwise eligible activities under paragraph (4), shall receive up to 0.5 days of sentence credit for each day in which the prisoner is engaged in activities described in this paragraph." 730 ILCS 5/3-6-3(a)(4.2) (West 2022).

The referenced "paragraph (4)" refers to subsection (a)(4)(A) of section 3-6-3, which allows for prisoners engaged in various full-time programs and activities to receive one day of sentence credit for each day in which they are engaged in the programs or activities. *Id.* § 3-6-3(a)(4)(A). Additionally, subsection (a)(4)(A) also allows a prisoner "held in pre-trial detention prior to his or her current commitment to [DOC]" to receive credit for various programs. *Id.*

¶ 22        Defendant argues that section 3-6-3(a)(4.2) of the Code is not limited to those sentenced to DOC and also applies to people held in pretrial and presentence custody. He notes that the term "prisoner" is not defined in section 3-6-3 and is used interchangeably with the term "inmate," demonstrating that in subsection (a)(4.2), "the legislature intended people in custody to be credited for attending self-improvement programs, regardless of whether they did so while in the custody of IDOC or the county jail." He states that if the legislature had intended to differentiate those in State custody from those in county custody, it would have done so

explicitly, as it did in other subsections, like (a)(4)(A). See *id.* Alternatively, he argues that we should find the plain language of the statute to be ambiguous as to the scope of the term "prisoner" and resolve the ambiguity in his favor. He acknowledges that recent Illinois decisions have reached the opposite conclusion, specifically, *People v. Williamson*, 2024 IL App (3d) 220501, and *People v. Simpson*, 2024 IL App (4th) 230846-U. However, as *Williamson* is a Third District case and *Simpson* is unpublished, he encourages us to reject their reasoning.

¶ 23        In *Williamson*, the defendant worked for 242 days as a kitchen tender while in presentence custody. *Williamson*, 2024 IL App (3d) 220501, ¶ 21. At sentencing, the trial court denied him credit for his work assignment, finding that section 3-6-3(a)(4.2) applied only to individuals performing work assignments while held in DOC. *Id.* ¶ 6; 730 ILCS 5/3-6-3(a)(4.2) (West 2022). Defendant appealed, arguing that the "clear and unambiguous wording of section 3-6-3(a)(4.2) entitled him to credit for his work assignment where it stated that any prisoner was entitled to it." *Williamson*, 2024 IL App (3d) 220501, ¶ 6. The appellate court disagreed, finding that "while the statute does use the terms prisoner and inmate interchangeably, there are sections that specifically address individuals held in the IDOC and sections that specifically include individuals held in pretrial custody." *Id.* ¶ 23. It concluded that if the legislature had intended section 3-6-3(a)(4.2) to apply to those held in pretrial custody, it would have explicitly stated that intention, as it had for other subsections. *Id.* ¶ 26.

¶ 24        Similarly, in *Simpson*, we were presented with a similar situation and agreed with the Third District's reasoning, concluding that the defendant was not eligible for sentencing credit under section 3-6-3(a)(4.2) where the defendant's courses and work as a pod tender occurred while he was in pretrial detention. *Simpson*, 2024 IL App (4th) 230846-U, ¶ 37.

¶ 25　　　　We again confirm our agreement with *Williamson*. Defendant's argument that section 3-6-3(a)(4.2) applies both to programs completed in presentence or pretrial custody as well as those completed while in the custody of the DOC is uncompelling when the statute is viewed as a whole. As defendant acknowledges, other subsections of section 3-6-3 make it explicitly clear that they also apply to people held in the custody of the county. For example, as stated previously, section 3-6-3(a)(4)(A) provides for sentencing credit for full-time programs for inmates held in pretrial detention, as well as those committed to DOC. 730 ILCS 5/3-6-3(a)(4.2) (West 2022). Similarly, section 3-6-3(a)(4.1) allows people "held in pre-trial detention prior to the current commitment to [DOC]" to receive credit for earning a high school diploma or associate degree while in custody. *Id.* § 3-6-3(4.1). Contrary to these subsections, subsection (a)(4.2) does not state its application to people held in pretrial or presentence custody. See *id.* § 3-6-3(a)(4.2). We conclude that the legislature's decision not to include an explicit reference to programs completed while in presentence custody, as it did in other parts of this section, was intentional. See *Hudson*, 228 Ill. 2d at 193 ("When the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended."). We further note that if we were to read section 3-6-3(a)(4.2) as applying both to people held in DOC and people held in county jail, we would run the risk of rendering the legislature's explicit inclusion of both groups in other provisions superfluous, something we are unwilling to do. See *Clark*, 2019 IL 122891, ¶ 20.

¶ 26　　　　Defendant argues that the modifier "any" before "prisoner" in section 3-6-3(a)(4.2) evinces the legislature's intent to include all those in custody in its application. We disagree for the reasons explained above. Had the legislature intended the phrase "any prisoner" to serve as a catchall for every person in custody, it could have easily used that phrase in

subsections (a)(4)(A) and (a)(4.1), where it clearly had that intent. Yet it did not, suggesting that when the legislature intended a provision to apply to those in presentence/pretrial custody, it made that fact explicitly clear.

¶ 27      Defendant also argues the terms "prisoner" and "inmate" are used interchangeably throughout the statute, suggesting that the term "prisoner" in section 3-6-3(a)(4.2) could be interpreted as referring to those in pretrial and presentence custody. It is true that at various times, this section appears to use both "inmate" and "prisoner" to refer to those who have already been sentenced to DOC. See, *e.g.*, 730 ILCS 5/3-6-3(a)(4)(D) (West 2022) (referring to an "inmate" serving a term of natural life imprisonment); *id.* § 3-6-3(a)(2.2) (referring to a "prisoner" serving a term of natural life imprisonment). However, we note that while "inmate" is also used to refer to those in pretrial custody (see *id.* § 3-6-3(a)(4)(A)), we find no instance in this section where the term "prisoner" is used in the same way. Instead, when referring to those being held in pretrial/presentence custody, this section exclusively uses the term "committed person" or "inmate." See *id.* § 3-6-3(a)(4)(A), (a)(4.1). Regardless, even if this section used the terms "prisoner" and "inmate" interchangeably, as defendant argues, it still would not explain the legislature's choice to draft certain sections to explicitly allow credit to be given to people in pretrial custody and not others. This is not a discrepancy in the language of section 3-6-3(a)(4.2) that defendant can overcome to support his preferred interpretation. We find that section 3-6-3(a)(4.2) unambiguously does not allow sentencing credit to be given for programs completed in presentence or pretrial custody.

¶ 28      Because we find that section 3-6-3(a)(4.2) does not apply to credits earned prior to commitment to DOC, we need not address defendant's argument concerning whether the credits he earned were "self-improvement programs" as intended by this section.

- 9 -

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.